**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. EDWARD LEE SULLIVAN, *Defendant-Appellant*. | No. 12-10196 D.C. No. 4:09-cr-00167-DLJ-1 |

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, v. EDWARD LEE SULLIVAN, *Defendant-Appellee*. | No. 12-10217 D.C. No. 4:09-cr-00167-DLJ-1 ORDER AND OPINION |

Appeal from the United States District Court
for the Northern District of California
D. Lowell Jensen, Senior District Judge, Presiding

Argued and Submitted
January 14, 2014—San Francisco, California

Filed July 29, 2015

Before: Richard C. Tallman and Sandra S. Ikuta, Circuit Judges, and Beverly Reid O'Connell, District Judge.[*]

Opinion by Judge Ikuta

---

## SUMMARY[**]

---

### Criminal Law

The panel withdrew an opinion filed on May 28, 2014, and filed a superseding opinion affirming in part and reversing in part a criminal judgment, and remanding, in a case in which the defendant was convicted under 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B) for producing and possessing a sexually explicit video depicting a 14-year-old girl.

The panel held that venue in the Northern District of California for the production count was not improper, and that *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012), does not undermine this court's precedent that Congress may regulate even purely intrastate production of child pornography and criminalize its intrastate possession.

The panel held that the district court did not err in denying the defendant's motion to suppress evidence

---

[*] The Honorable Beverly Reid O'Connell, United States District Court Judge for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

obtained from his laptop computer.  Balancing the nature of the intrusion into the defendant's possessory interests against the government's interests justifying the intrusion, the panel concluded that the government's seizure and retention of the laptop for 21 days before obtaining a search warrant was, under the totality of the circumstances, not unreasonable under the Fourth Amendment.

The panel held that violations of Calif. Penal Code § 261.5(d) (unlawful sexual intercourse with a minor under 16 years of age) and Calif. Penal Code § 288a(b)(2) (oral copulation with a minor under 16 years of age) are categorically offenses "relating to" aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a minor or ward, and that the district court therefore properly applied the mandatory minimum sentence enhancement provisions contained in 28 U.S.C. §§ 2251(e) and § 2252(b)(2).  Reading together *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), and *Mellouli v. Lynch*, 135 S. Ct. 1980 (2015), the panel interpreted the phrase "relating to" broadly when applying the *Taylor* categorical approach unless the text and history of the statute require a narrower construction, which it concluded is not the case with §§ 2251(e) or 2252(b)(2).

On the government's cross-appeal, the panel held that the district court erred in its legal analysis when sustaining the defendant's objection to the inclusion of a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  The panel remanded for resentencing because it could not tell if the district court would impose the same sentence if it applied the correct legal analysis.

**COUNSEL**

John J. Jordan, San Francisco, California, for Defendant-Appellant/Cross-Appellee.

Anne Voigts (argued), Assistant United States Attorney; Melinda Haag, United States Attorney; Barbara J. Valliere, Assistant United States Attorney, Chief, Appellate Division, San Francisco, California, for Plaintiff-Appellee/Cross-Appellant.

Sean Kennedy, Federal Public Defender; Koren Bell, Deputy Federal Public Defender, Los Angeles, California, for Amicus Curiae Federal Public Defender for the Central District of California.

**ORDER**

The opinion filed on May 28, 2014, and appearing at 753 F.3d 845, is withdrawn. The superseding opinion will be filed concurrently with this order. The parties may file additional petitions for rehearing or rehearing en banc.

**OPINION**

IKUTA, Circuit Judge:

Edward Sullivan was convicted of violations under 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B) for producing and possessing a sexually explicit video depicting a 14-year-old girl. He raises multiple challenges to these convictions, as

well as to the mandatory minimum sentences imposed under 18 U.S.C. §§ 2251(e) and 2252(b)(2).  The government cross appeals, arguing that the district court miscalculated Sullivan's Sentencing Guidelines range.  We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and affirm in part and reverse in part.[1]

I

Sullivan's use of 14-year-old Erika Doe to produce the sexually explicit video at issue in this case was not the first time he engaged in sex-related conduct with a minor.  In 2001, Sullivan was convicted in Nevada of conspiracy to commit pandering involving a 13-year-old girl.  In 2002, Sullivan was convicted in California of four offenses involving a 14-year-old female victim:  (1) unlawful sexual intercourse with a minor in violation of California Penal Code § 261.5(d); (2) oral copulation with a minor in violation of California Penal Code § 288a(b)(2); (3) pimping in violation of California Penal Code § 266h(a); and (4) pandering in violation of California Penal Code § 266i(a)(2).  Sullivan was sentenced to 140 months imprisonment for the California convictions.

In November 2007, Sullivan was released on parole.  As a parolee, Sullivan was subject to a range of standard and special parole conditions.  Among the standard parole conditions was a consent to search, which stated:  "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of

---

[1] We resolved Sullivan's remaining claims in a previously filed memorandum disposition. *United States v. Sullivan*, 575 F. App'x 973 (9th Cir. 2014).

Corrections or any law enforcement officer." In addition, Sullivan was subject to a number of special parole conditions, which (among other things) prohibited him from having any contact with females between the ages of 14 and 18 years, and provided that "[a]ny computer or mobile telecommunications device under your control, or [to] which you have access, is subject to search and seizure by your Parole Agent." The California Department of Corrections gave Sullivan notice of these conditions, which Sullivan acknowledged by signing the notice form and initialing each of the special conditions.

Sullivan took up temporary residence at the Bay Breeze Inn located in Oakland, California. In March 2008, about four months after his release, Sullivan approached Erika, a 14-year-old girl who was standing on a street in Berkeley, California, with her friends after school. After Erika and Sullivan talked, she left with Sullivan in his car. Erika stayed with Sullivan for the next two weeks. On the first night, Sullivan took Erika to the house of Kimberlea Reed, a friend of his who lived in Vacaville, California. Reed knew that Sullivan was not allowed to have contact with minor girls, and when Erika failed to produce a license proving she was 18 years old, Reed told Sullivan not to bring Erika to her home. For the next two weeks, Sullivan and Erika stayed at the Bay Breeze Inn or in Sullivan's car, but returned at least once to the house in Vacaville. While at the Bay Breeze Inn, Sullivan had sex with Erika.

The district court found that during this period, Sullivan became the dominating force in Erika's life, and controlled all of her daily activities. Among other things, Sullivan replaced Erika's clothing with more adult and sophisticated outfits and paid to have her hair straightened and amplified

with extensions. Erika testified that she was afraid of Sullivan, a large man in his forties, about six feet five inches tall and 250 pounds.

Over the course of the two weeks that Erika remained with Sullivan, he took numerous videos and still photographs of Erika in various poses. In several of the videos, Sullivan discussed prostitution with Erika. In one video, Sullivan discussed a past incident where he had "checked" or punished Erika because she had tried to leave him. Sullivan uploaded one of the still photographs of Erika onto an adult website, "Fungirlsplay," using his name and e-mail address.

On March 9, 2008, Sullivan returned to the house in Vacaville where he made the sex video at issue in this case using a digital camera that had been manufactured in China and exported to the United States. According to the district court, the video, 100_0064.mov, showed Erika performing oral sex on Sullivan. Erika's face was clearly visible in the video, and a man's voice could be heard in the background, directing and describing the activities that were taking place. At trial, Erika testified that Sullivan had shot and narrated the video, and is also the man seen in the video. This sex video was later uploaded to Sullivan's laptop computer. After the video was produced, Sullivan recorded and narrated two other videos, one of which showed Erika naked from the waist up, and the other showed Sullivan questioning Erika regarding whether she wanted to be a porn star.

On March 17, 2008, an Oakland police officer saw Erika standing on the street in an area frequented by prostitutes. Suspecting she was engaging in prostitution, the officer stopped her for questioning. In response to a question about Sullivan, who was standing nearby, Erika denied he was her

pimp. Although the Oakland police stopped and questioned Sullivan, they did not arrest him. The officer took Erika into custody, and after learning that she was the subject of a missing persons report, returned her to her mother. Once Erika was home, her mother took her to the hospital, where Erika made a statement to the police. Because the initial abduction occurred in Berkeley, jurisdiction over the investigation was transferred to the Berkeley Police Department.

About a week later, on March 24, 2008, Erika's mother contacted Sullivan's parole officer and reported that Sullivan had kidnaped, raped, and pimped her daughter. Based on this report, Sullivan's parole was revoked. On March 25, 2008, parole officers arrested Sullivan in his car outside of the Bay Breeze Inn. During a parole search of the car, the agents seized several items, including the laptop computer, digital camera, a book about pimping, and a cellular telephone. The parole officers took Sullivan into custody and charged him with eight parole violations, including that Sullivan forced Erika to engage in intercourse and had kept pornographic images on his cellular telephone, in violation of his parole conditions.[2] On April 2, 2008, the parole officers transferred custody of the evidence to the Berkeley Police Department because the California Department of Corrections did not have the technical ability to conduct a forensic search of the laptop.

On April 10, 2008, Detective Kaplan and Sergeant Ross of the Berkeley Police Department interviewed Sullivan at the jail where he was being held. Sullivan claimed that in one of

---

[2] On April 14, 2008, Sullivan agreed to a disposition of the violation charges.

the videos on his laptop, Erika stated that she was 19 years old. Sullivan agreed that the police should view the video to corroborate his belief about Erika's age. He stated, "Look in the computer. I give you consent." Sullivan also signed a consent form.[3] On April 15, 2008, Detective Kaplan also obtained a search warrant to search the laptop. A forensic search of Sullivan's laptop revealed the sex video at issue in this case.

The federal government filed a two-count indictment against Sullivan in the Northern District of California on February 18, 2009. Count 1 charged Sullivan with production of child pornography pursuant to 18 U.S.C. § 2251(a). Count 2 charged Sullivan with possession of child pornography pursuant to 18 U.S.C. § 2252(a)(4)(B). Sullivan entered a plea of not guilty, and later waived his right to a jury trial.

Before trial, Sullivan moved to suppress the evidence obtained from his laptop computer. Relevant to this appeal, he argued that the 21-day delay between March 25, 2008, the

---

[3] This consent form stated:

> I, Edward Sullivan, give Officer Kaplan and Sgt. Ross of the Berkeley Police Department permission to search through all files, hard drives and all information contained on my computer that was taken from me by Agent Tran [, a parole officer,] when I got arrested. Including all drives, internal and external storage devices.
>
> I give this permission and consent freely. I was not coerced.
>
> I also give consent to search my camera.

date the parole officers seized the laptop, and April 15, 2008, the date the police obtained a warrant, was unreasonable, and therefore the search and seizure of the laptop violated his Fourth Amendment rights. The district court denied the motion.

The bench trial commenced on December 14, 2010. At the close of the government's case-in-chief, Sullivan moved to dismiss Count 2 (possession of child pornography under § 2252(a)(4)(B)) because the sex video was not sufficiently connected to interstate commerce, and moved to dismiss Count 1 (production of child pornography under § 2251(a)) for lack of venue, because the video had been filmed in Vacaville (in the Eastern District of California), and the district court was in the Northern District of California. The district court denied both motions.

At the conclusion of the 13-day bench trial, the district court found Sullivan guilty on both counts. The district court found incredible Sullivan's testimony that he did not know Erika was a minor, given that Erika's physical appearance made it clear that she was an adolescent.[4]

During the sentencing phase of the proceeding, the district court determined that the mandatory minimum enhancement provisions contained in the two statutes of conviction, *see* 18 U.S.C. §§ 2251(e), 2252(b)(2), applied to Sullivan based on his California convictions for unlawful sexual intercourse with a minor and oral copulation with a minor, *see* Cal. Penal Code §§ 261.5(d), 288a(b)(2). The district court also ruled on

---

[4] Sullivan filed several post-verdict motions, one of which reiterated his arguments that the district court lacked jurisdiction and venue. The district court concluded there was no basis to revisit its prior rulings.

Sullivan's objection to the two-level Guidelines enhancement for obstruction of justice recommended in the Presentence Investigation Report (PSR). Despite having found Sullivan's testimony "not credible" and "not true," the district court sustained the objection and declined to increase Sullivan's offense level from 36 to 38.

The district court sentenced Sullivan to the mandatory minimum 25 years imprisonment for the conviction under § 2251(a) and the mandatory minimum 10 years imprisonment for the conviction under § 2252(a)(4)(B), to be served concurrently, followed by a lifetime of supervised release. Sullivan timely appealed his convictions and sentence. The government cross appealed the district court's ruling regarding the obstruction enhancement.

II

We begin by addressing Sullivan's threshold arguments that the district court erred in denying his motion to dismiss Count 1 of the indictment (production of child pornography under 18 U.S.C. § 2251(a)) for improper venue, and his motion to dismiss Count 2 of the indictment (possession of child pornography under 18 U.S.C. § 2252(a)(4)(B)) for lack of federal jurisdiction.

A

Sullivan argues that the district court was required to dismiss the production of child pornography count, 18 U.S.C. § 2251(a), for lack of venue in the Northern District of California because Sullivan produced the sex video at issue in the Eastern District of California. We review the district

court's venue determination de novo. *United States v. Gonzalez*, 683 F.3d 1221, 1224 (9th Cir. 2012).

The Constitution provides that the trial in a criminal prosecution shall be in the "[s]tate where the said [c]rimes shall have been committed." U.S. Const. art. III, § 2, cl. 3; *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). Under 18 U.S.C. § 3237(a), offenses "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." To determine whether a crime is a continuing offense for purposes of § 3237, "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011) (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)). "Venue is proper under § 3237 when an 'essential conduct element' of the offense continues into the charging district." *Id.* (quoting *Rodriguez-Moreno*, 526 U.S. at 280–82).

Here, the conduct constituting the elements of a § 2251(a) offense include: (1) employing, using, persuading, inducing, enticing or coercing any minor to engage in "any sexually explicit conduct"; (2) "for the purpose of producing any visual depiction of such conduct"; (3) if the depiction "was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce." 18 U.S.C. § 2251(a). Sullivan engaged in conduct constituting the offense in both the Northern and Eastern Districts of California. First, the district court found

that Sullivan "established and maintained physical and mental control over the relationship between himself and the girl from the time she first entered his car" in Berkeley, which is in the Northern District, and used this control to coerce her into making a sex video. Second, the court found that Sullivan used his control over Erika to induce her to produce the sex video at issue (the second element of the § 2251(a) offense) in Vacaville, which is in the Eastern District. Accordingly, Sullivan's conduct constituting the § 2251(a) offense spanned more than one district. Sullivan argues that his interactions with Erika in the Northern District of California were merely preliminary, or were for the sole purpose of recruiting Erika to become a prostitute, and therefore were not essential steps towards making the video. This argument is meritless; the evidence adduced at trial supports the district court's findings that the persuasion, inducement, enticement and coercion that led to the video's filming in Vacaville had their genesis in the Northern District. *See United States v. Engle*, 676 F.3d 405, 417–18 (4th Cir. 2012) (holding that venue for a violation of § 2251(a) is proper in the district where a defendant entices the victim to engage in sexual conduct, even though the defendant created the video at issue in a different district). Therefore, venue was proper in the Northern District of California under § 3237(a).

B

We next address Sullivan's argument that Congress lacks the authority to regulate purely intrastate production and possession of a single video, and therefore neither § 2251(a)

nor § 2252(a)(4)(B) can constitutionally be applied to him.[5] We have previously rejected this argument, concluding that Congress could rationally "conclude that homegrown child pornography affects interstate commerce," and therefore Congress may regulate even purely intrastate production of child pornography, *see United States v. McCalla*, 545 F.3d 750, 755–56 (9th Cir. 2008), and criminalize its intrastate possession, *United States v. Gallenardo*, 579 F.3d 1076, 1081 (9th Cir. 2009). Nevertheless, Sullivan claims that the Supreme Court's recent decision in *National Federation of Independent Business v. Sebelius* (*NFIB*), 132 S. Ct. 2566 (2012), requires us to overrule this precedent. We disagree. Chief Justice Roberts's separate opinion in *NFIB* stated that the Commerce Clause did not give Congress authority to "compel[] individuals to become active in commerce by purchasing a product." *Id.* at 2587 (emphasis omitted). The four dissenting justices agreed that "one does not regulate commerce that does not exist by compelling its existence." *Id.* at 2644 (Scalia, J., dissenting). Accordingly, five justices agreed that the Commerce Clause gives Congress authority only to regulate commerce, not to compel it. This precedent is not applicable here, however, because § 2251 and § 2252 do not compel commerce, but merely regulate an activity that Congress could rationally determine would affect interstate commerce, taken in the aggregate. *See Gallenardo*, 579 F.3d at 1081; *McCalla*, 545 F.3d at 755–56. Because *NFIB* is not "clearly irreconcilable" with our precedents, they remain

---

[5] Following the government's completion of its case-in-chief in the bench trial, Sullivan moved for acquittal on Count 1 of the indictment on the ground that it could not be constitutionally applied to him, but he did not challenge Count 2 on this basis. We review a sufficiency of the evidence challenge that is first brought on appeal for plain error. *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004).

binding. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see also United States v. Sheldon*, 755 F.3d 1047, 1050 (9th Cir. 2014) (concluding that because the recorder used to produce child pornography was manufactured in China, there was "sufficient [evidence] to satisfy the jurisdictional element of § 2251(a)"). Accordingly, § 2251(a) and § 2252(a)(4)(B) are constitutional as applied to Sullivan.

III

We next consider Sullivan's argument that the district court erred in denying his motion to suppress evidence obtained from his laptop computer. He claims that under the reasoning in *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), and the Eleventh Circuit's decision in *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (per curiam), the government's unexplained 21-day delay in obtaining a search warrant was unreasonable, and therefore violated his Fourth Amendment rights.[6] We review de novo the denial of Sullivan's suppression motion. *United States v. Hernandez*, 313 F.3d 1206, 1208 (9th Cir. 2002). We review the district

---

[6] Sullivan's suppression motion in the district court pertained to evidence obtained from his laptop computer. To the extent Sullivan claims on appeal that evidence obtained from his digital camera should have also been suppressed, this argument is waived. *See* Fed. R. Crim. P. 12(b)(3)(C), (e) (providing that a party waives any objection that must be made in a pretrial motion, including a motion to suppress evidence, by failing to raise it at the proper time); *see also United States v. Davis*, 663 F.2d 824, 831 (9th Cir. 1981) (motions to suppress evidence must be raised prior to trial). "Although we may grant relief from a waiver if the defendant present[s] a legitimate explanation for his failure to raise the issue in a timely manner," *United States v. Mausali*, 590 F.3d 1077, 1080–81 (9th Cir. 2010) (internal quotation marks omitted), Sullivan has presented no such legitimate explanation here.

court's factual findings for clear error.  *United States v. Gill*, 280 F.3d 923, 928 (9th Cir. 2002).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.  An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights.  The touchstone is reasonableness.  *See United States v. Van Leeuwen*, 397 U.S. 249, 252–53 (1970).  We "determine whether the delay was 'reasonable' under the totality of the circumstances, not whether the Government pursued the least intrusive course of action."  *Hernandez*, 313 F.3d at 1213.  Such determinations are made on a case-by-case basis.  *See Van Leeuwen*, 397 U.S. at 253.

The Supreme Court has adopted a balancing test to determine whether a seizure is reasonable.  We must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).  In balancing these interests, courts may consider whether the individual consented to a seizure and search.  *See, e.g.*, *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011). "Where a person *consents* to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires *voluntary* tender of property."  *Id.*; *see also United States v. Christie*, 717 F.3d 1156, 1163 (10th Cir. 2013); *United States v. Laist*, 702 F.3d 608, 618 (11th Cir. 2012).  Courts may also consider a defendant's parolee status. *See Samson v. California*, 547 U.S. 843, 849–50 (2006) (parolee status significantly diminishes privacy interests); *see*

*also Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 68–69 (1992) (holding that intrusions into possessory and privacy interests resulting from a seizure must satisfy similar Fourth Amendment standards).

In applying this balancing test to the seizure of Sullivan's laptop, we start by considering the extent of the intrusion on Sullivan's possessory interests given the totality of the circumstances. We conclude they were minimal. During the entire time period when the laptop was retained by the government, Sullivan was in custody on eight parole violation charges. He does not claim that he could have made use of the laptop while incarcerated or that he sought return of his laptop to himself or a third party. Where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced. *See United States v. Segura*, 468 U.S. 796, 813 (1984) (Burger, C.J.) (plurality opinion) (holding that defendants' possessory interests in their apartment were "virtually nonexistent" when they "were under arrest and in the custody of the police throughout the entire period the agents occupied the apartment"); *see also United States v. Clutter*, 674 F.3d 980, 984–85 (8th Cir. 2012) (determining that when defendant was in jail at the time of the seizure of his computer, the seizure "did not meaningfully interfere with his possessory interests"). Moreover, an individual who did "not even allege[], much less prove[], that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment" and "never sought return of the property" has not made a sufficient showing that the delay was unreasonable. *United States v. Johns*, 469 U.S. 478, 487 (1985).

Further, several of the factors that reduce an individual's possessory interest applied here. Some seventeen days after his laptop was seized, Sullivan gave his express consent to the search of his laptop, and indeed urged the police officers to review videos stored on the laptop, claiming they contained exculpatory evidence. Because such consent "requires *voluntary* tender of property," *Stabile*, 633 F.3d at 235, it further vitiates his claim that any possessory interest was infringed. Moreover, because Sullivan was a parolee subject to a consent condition for seizure, his possessory interest in the laptop was reduced. *Cf. Samson*, 547 U.S. at 850; *United States v. Knight*s, 534 U.S. 112, 119 (2001). Under these circumstances, "[t]he actual interference" with Sullivan's possessory interests was minimal. *See Segura*, 468 U.S. at 813 (Burger, C.J.) (plurality opinion).

We next consider the degree to which the seizure and retention of the laptop was necessary for the promotion of legitimate governmental interests. *Place*, 462 U.S. at 703–04. The state "has an overwhelming interest in supervising parolees because parolees . . . are more likely to commit future criminal offenses." *Samson*, 547 U.S. at 853 (internal quotation marks omitted). Moreover, under the circumstances of this case, the government had a reasonable basis for retaining and searching the laptop based on the likelihood that it contained evidence of Sullivan's parole violations, as well as child pornography. Because the parole officers who initially seized the laptop from Sullivan's vehicle did not have the capability to perform a forensic search, they transferred it to the Berkeley police. The Berkeley police then obtained Sullivan's consent to the search of the laptop and also sought a search warrant.

The government's course of conduct was reasonable under the totality of the circumstances given Sullivan's incarceration and the government's interest in retaining and searching the laptop for evidence of crimes.  Even if the government could have moved faster to obtain a search warrant, the government is not required to pursue "the least intrusive course of action."  *Hernandez*, 313 F.3d at 1213.  Accordingly, we conclude that the government's seizure and retention of the laptop for 21 days before obtaining a search warrant was not an unreasonable seizure under the Fourth Amendment.

Sullivan's reliance on *Dass* and *Mitchell* is misplaced.  In *Dass*, law enforcement officials collected suspicious packages at post offices and allowed police dogs to sniff them.  849 F.2d at 414.  If the dog alerted, suggesting the presence of marijuana, then the agents would retain the package in order to obtain a search warrant.  *Id.*  In holding that law enforcement acted unreasonably by detaining packages for 7 to 23 days before executing a search warrant, *Dass* implicitly determined that such a lengthy retention of mailed packages constituted a substantial intrusion into the possessory interests of the individuals who placed the packages in the mail.  *Id.* at 415.  *Dass*'s conclusions regarding the interests of a member of the public putting a package in the mail are not applicable here, where a parolee under a consent-to-seizure condition was arrested for violation of other parole conditions.

Nor does *Mitchell* help Sullivan.  In *Mitchell*, ICE agents went to the defendant's residence based on their suspicion that he was engaged in distributing and receiving child pornography.  After the defendant consented to a search of his laptop, the agents removed and retained the computer's

hard drive, but did not obtain a search warrant until 21 days later.  565 F.3d at 1350–51.  On the facts of that case, the Eleventh Circuit held that the delay was unreasonable because the defendant had a substantial possessory interest in the hard drive, which was likely to contain information "of exceptional value to its owner," and the "detention of the hard drive for over three weeks before a warrant was sought constitute[d] a significant interference with Mitchell's possessory interest."  *Id.* at 1351.  On the other side of the balance, the court held that there was no compelling justification for the government's delay.  *Id.*

Here, by contrast, Sullivan was in custody the entire time on distinct charges, does not argue he made any request for the laptop's return, and had a reduced possessory interest due to his status as a parolee.  On the government-interest side of the balance, the government had a reasonable basis for its delay, including the need to transfer the laptop between agencies.  *Cf. id.* at 1352–53 (applying a rule of reasonableness "dependent on all of the circumstances," and indicating that "if the assistance of another law enforcement officer had been sought, we would have been sympathetic to an argument that some delay in obtaining that assistance was reasonable").   Because this case presents different circumstances than *Dass* and *Mitchell*, the district court did not err in striking the balance between the intrusion into Sullivan's interests and the opposing law enforcement interests in favor of the government.

IV

We next turn to Sullivan's arguments that his prior state convictions for unlawful sexual intercourse with a minor under 16 years of age, California Penal Code § 261.5(d), and

oral copulation with a minor under 16 years of age, California Penal Code § 288a(b)(2), do not qualify as federal generic offenses for which the mandatory minimum enhancements under § 2251(e) and § 2252(b)(2) must be imposed. We review de novo whether Sullivan's prior convictions support the statutory mandatory minimum enhancements. *United States v. Strickland*, 601 F.3d 963, 967 (9th Cir. 2010) (en banc).

To determine whether a prior state conviction falls into the specified class of federal offenses, we generally apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See United States v. Sinerius*, 504 F.3d 737, 740 (9th Cir. 2007). Under *Taylor*, the court first defines the federal generic definition of the crime, and then compares the elements of the state offense with that definition. *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1240 (9th Cir. 2014). If the state offense criminalizes the same or less conduct than the federal generic definition of the crime, then it is a categorical match to the federal generic offense. *See id.* But where a state statute of conviction criminalizes more conduct than the federal generic offense, it does not qualify as a categorical match. *Id.* Under these circumstances, a court may apply a modified categorical approach if the state criminal statute is divisible. *See Descamps v. United States*, 133 S. Ct. 2276, 2283–85 (2013). The *Taylor* categorical approach requires us to look only to the statutory definition of the prior offense and not to the facts underlying that conviction. *See Mellouli v. Lynch*,

135 S. Ct. 1980, 1986–87 (2015); *Taylor*, 495 U.S. at 600–01.[7]

Applying the *Taylor* framework, we begin by defining the generic federal offense. Under § 2251(e) (mandatory minimum for production of child pornography), a defendant with a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward" is subject to a mandatory minimum sentence of "not less than 25 years." 18 U.S.C. § 2251(e).[8] Similarly, under § 2252(b)(2) (mandatory minimum for the possession of child pornography), a defendant with a prior conviction "under the laws of any State

---

[7] Sullivan's argument that a jury must decide whether a prior conviction is an offense "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," 18 U.S.C. §§ 2251(e), 2252(b)(2), is foreclosed by *United States v. Brown*, 417 F.3d 1077 (9th Cir. 2005) (per curiam), which held that the categorization of a prior conviction under *Taylor* "is a legal question, not a factual question coming within the purview of *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)]." *Id.* at 1079–80.

[8] Section 2251(e) states, in pertinent part:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years . . . .

relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" is subject to a mandatory minimum sentence of "not less than 10 years." *Id.* § 2252(b)(2).**[9]**  Under this language, the federal generic offense is a class of offenses "relating to" any of three types of abusive sexual conduct.  When considering such a class of offenses, we "'compare the crime of conviction with crimes we have previously determined to' fall into that particular classification of crimes." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) (quoting *Cerezo v. Mukasey*, 512 F.3d 1163, 1166 (9th Cir. 2008)) (considering "crimes of violence").  "Under the categorical approach, we follow our common practice in cases involving non-traditional offenses by defining the offense based on the ordinary, contemporary, and common meaning of the statutory words." *Sinerius*, 504 F.3d at 740 (internal quotation marks omitted).

Because each of the three types of offenses listed in § 2251(e) and § 2252(b)(2) involve sexual conduct and abuse, we begin by identifying the federal generic meaning for these terms.  We give "the term 'sexual' its ordinary and commonsense meaning." *Sinerius*, 504 F.3d at 741.  We have

---

**[9]** Section 2252(b)(2) provides, in pertinent part:

> Whoever violates, or attempts or conspires to violate, paragraph (4) of subsection (a) shall be fined under this title or imprisoned not more than 10 years, or both, but . . . if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

addressed the term "abuse" in several different contexts. "[W]e have defined 'abuse' to mean 'misuse . . . to use or treat so as to injure, hurt, or damage . . . to commit indecent assault on.'" *Id.* at 740 (alterations in original) (quoting *United States v. Lopez-Solis*, 447 F.3d 1201, 1207 (9th Cir. 2006)).   This definition "encompass[es] behavior that is harmful emotionally and physically." *Id.* (alteration in original) (quoting *Lopez-Solis*, 447 F.3d at 1207).   In addition, we have previously determined that a statutory rape offense constitutes "the generic offense of 'sexual abuse of a minor'" if it includes the elements set forth in 18 U.S.C. § 2243, specifically: "(1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1152 (9th Cir. 2008) (en banc), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc) (per curiam), *abrogated by Descamps*, 133 S. Ct. 2276.  This definition of "sexual abuse of a minor" also "comports with 'the ordinary, contemporary, and common meaning of the words'" sexual abuse of a minor. *Id.* (quoting *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999)).   While we have rejected the argument that the term "sexual abuse" must be defined by reference to the federal offenses listed in 18 U.S.C. §§ 2241–2248, *see Sinerius*, 504 F.3d at 742 (considering the generic federal definition of "sexual abuse" for purposes of 18 U.S.C. § 2252A(b)), and thus we are not limited "to looking to federal statutes to define federal generic offenses where the federal statute uses the same name as a federal generic offense," *United States v. Farmer*, 627 F.3d 416, 421 (9th Cir. 2010), such federal statutes nevertheless are relevant to our consideration of whether a particular state statute is one "relating to" abusive sexual conduct, *see Estrada-*

*Espinoza*, 546 F.3d at 1152–53 (stating that "it is unnecessary to survey current criminal law to ascertain a federal [generic definition of 'sexual abuse of a minor'] because Congress has already supplied it").

We now turn to the California crimes of conviction at issue here in order to compare them with the federal generic offenses. Section 261.5(d) proscribes any person who is 21 years of age or older from engaging in an act of unlawful sexual intercourse with a minor who is under 16 years of age. Cal. Penal Code § 261.5(d). Section 288a(b)(2) proscribes any person over age 21 from participating in an act of oral copulation with a person who is under 16 years of age. *Id.* § 288a(b)(2). Neither of these offenses includes misusing or treating another so as to "to injure, hurt, or damage," or committing "indecent assault on" another, as an element, which would constitute abuse. *See Sinerius*, 504 F.3d at 743. We have previously determined that because section 261.5(d) criminalizes sexual relations with a person who is "a day shy of 16," it is not necessarily abusive. *Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1015–16 (9th Cir. 2009); *see also United States v. Medina-Villa*, 567 F.3d 507, 514 (9th Cir. 2009). The same reasoning applies to section 288a. Further, the offenses described in section 261.5(d) and section 288a(b)(2) are not equivalent to the federal generic offense of "sexual abuse of a minor" described in *Estrada-Espinoza* because one element of that offense requires the government to prove that the defendant engaged in the sexual act "knowingly," *Pelayo-Garcia*, 549 F.3d at 1013, and neither California statute includes this mens rea requirement. Therefore, the state offenses are not a categorical match to the federal generic definitions we have adopted for sexual abuse of a minor.

Unlike our usual categorical approach, however, the federal statutes here do not require us to find that the state conviction is categorically the same as any particular federal offense, but only that the state conviction is one categorically "relating to" such federal offenses. We have held that the phrase "relating to" generally has a broadening effect on what follows. For example, in the context of similar language in 18 U.S.C. § 2252A(b),[10] we held that the phrase "relating to" "does not simply mandate a sentencing enhancement for individuals convicted of state offenses *equivalent* to sexual abuse." *Sinerius*, 504 F.3d at 743. "Rather, it mandates the enhancement for any state offense that stands in some relation, bears upon, or is associated with that generic offense." *Id.* This interpretation is consistent with Supreme Court precedent, which has broadly defined the term "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed.1979)) (construing "relating to" in a different statutory context). Accordingly, we reject Sullivan's argument that a prior conviction triggers a sentencing enhancement under § 2251(e) or § 2252(b)(2) only if the statutory definition of the prior offense is equivalent to a federal generic definition. Indeed, requiring such equivalence would render the words "relating to" in § 2251(e) and § 2252(b)(2) meaningless.

In considering the application of the *Taylor* categorical approach to a statute that used the term "relating to," the

---

[10] That offense imposes a mandatory minimum enhancement where the defendant has a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." 18 U.S.C. § 2252A(b)(1), (2).

Supreme Court recently affirmed that the words "relating to" are "broad" and "indeterminate," but cautioned that courts may not extend these terms "to the furthest stretch of [their] indeterminacy" where language and historical context tug "in favor of a narrower reading." *Mellouli*, 135 S. Ct. at 1990 (alteration in original) (internal quotation marks omitted). In *Mellouli*, a lawful permanent resident had been convicted of a misdemeanor offense for storing Adderall tablets in his sock under a Kansas law making it unlawful "to use or possess with intent to use any drug paraphernalia" to conceal a controlled substance. *Id.* at 1983–84 (quoting Kan. Stat. Ann. § 21-5709(b)). "At the time of Mellouli's conviction, Kansas' schedules included at least nine substances not included in the federal lists." *Id.* at 1984. The Board of Immigration Appeals (BIA) determined Mellouli was deportable under an immigration provision that authorizes the removal of an alien "convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)." *Id.* at 1984–85 (alteration in original) (quoting 8 U.S.C. § 1227(a)(2)(B)(i)). The BIA reasoned that § 1227(a)(2)(B)(i) covered Mellouli's drug paraphernalia offense because it involved "the drug trade in general"; accordingly, there was no "need to show that the type of controlled substance involved in a paraphernalia conviction is one defined in § 802." *Id.* at 1988 (internal quotation marks omitted). The Eighth Circuit upheld this determination on the ground that the offense was a crime "associated with the drug trade in general" and because there was "nearly a complete overlap between the drugs controlled under state and federal law." *Id.* at 1988–89 (internal quotation marks omitted).

The Court reversed, concluding that both the BIA and the Eighth Circuit erred by failing to give effect to the parenthetical limiting controlled substances to those "defined in section 802 of Title 21." *Id.* at 1990–91. The Court based this determination on its analysis of the statutory language and its historical context. *Id.* According to the Court, the *Taylor* categorical approach had routinely been applied "to assess whether a state drug conviction triggers removal under the immigration statute." *Id.* at 1987. The Court noted that the removal statute as originally enacted "specifically listed covered offenses and covered substances." *Id.* In 1986, Congress "replaced the increasingly long list of controlled substances [in § 1227] with the now familiar reference to 'a controlled substance (as defined in [§ 802]).'" *Id.* (second alteration in original). In determining whether a state statute of conviction rendered an alien removable, the BIA historically asked "whether the state statute under which the alien was convicted covered federally controlled substances and not others." *Id.* This historical background, the Court explained, "demonstrates that Congress and the BIA have long required a direct link between an alien's crime of conviction and a particular federally controlled drug." *Id.* at 1990. Therefore, the Court concluded that a state crime of conviction does not "fall[] within a category of removable offenses" defined by § 1227(a)(2)(B)(i) unless it covers the same drugs as are listed in § 802, which the Kansas statute did not. *Id.* at 1986, 1990–91.

Because Congress intended there to be a direct link between the alien's crime of conviction and the controlled substances listed in § 802, the Court rejected the government's argument that state offenses that did not cover drugs listed in § 802 could be offenses "relating to" the substances controlled under § 802. *Id.* at 1990. In doing so,

the Court first acknowledged that the words "relating to" are broad.[11]  *Id.*  Indeed, the Court noted that "[i]f § 1227(a)(2)(B)(i) stopped with the words 'relating to a controlled substance,'" it "would make sense" to interpret the Kansas offense as meeting the requirements of § 1227(a)(2)(B)(i).  *Id.* at 1988 n.9.  But because Congress "qualified 'relating to a controlled substance' by adding the limitation 'as defined in [§ 802],'" it intended to include only those state offenses in which a controlled substance as defined in § 802 figured as an element of the offense.  *Id.* at 1988 n.9, 1990–91 (alteration in original).

In sum, *Mellouli* cautions that while a federal statute's use of the terms "relating to" broadens its coverage, that extension is not limitless.  A court must consider history and context to determine if they "tug in favor of a narrower reading" of the federal provision.  *See id.* at 1990 (alterations and internal quotation marks omitted).  Specifically, where Congress expressly narrows the definition of the federal offense (for example, by referring to a specific list of controlled substances), we must conclude that a state offense that exceeds that definition is not one "relating to" the federal offense.  *See id.* at 1990–91.  Reading *Morales* and *Mellouli* together, we interpret the phrase "relating to" broadly when applying the *Taylor* categorical approach unless the text and history of the statute require a narrower construction.  *See id.* at 1988 n.9, 1990–91; *Morales*, 504 U.S. at 383.

---

[11] Indeed, even though the Kansas offense "would not have qualified as a drug-paraphernalia offense" under federal law because "possession alone" is not a federal crime, *id.* at 1985, the Court gave no weight to this distinction because "[t]he drug-paraphernalia possession law under which he was convicted, Kan. Stat. Ann. § 21–5709(b), by definition, related to a controlled substance."  *Id.* at 1984.

Applying this framework, we first consider whether anything in the text or historical background of § 2251(e) or § 2252(b)(2) indicate that Congress intended to limit the sexual abuse offenses listed in those statutes to certain specific federally defined offenses or acts, in the same way that Congress intended to limit "controlled substance" to only those listed in § 802. *See Mellouli*, 135 S. Ct. at 1990–91. We conclude they do not. Neither the text of § 2251(e) nor the text of § 2252(b)(2) contains any language analogous to the parenthetical considered in *Mellouli*. Instead, the terms "sexual abuse" and "abusive sexual conduct involving a minor or ward" are unqualified, just as the term "controlled substance" would have been without the limiting parenthetical. *See id.* at 1988 n.9. Other circuits agree that an enhancement for a prior conviction "relating to" specified abusive sexual acts "does not require that the predicate conviction *amount to* 'sexual abuse' or 'abusive sexual conduct involving a minor.'" *E.g.*, *United States v. Colson*, 683 F.3d 507, 511 & n.2 (4th Cir. 2012) (considering 18 U.S.C. § 2252A(b)(1)). Turning to the historical background of § 2251(e) and § 2252(b)(2), we have previously determined that Congress did not require a "direct link," *Mellouli*, 135 S. Ct. at 1990, between the state crime of conviction and a particular federal statute. *See Sinerius*, 504 F.3d at 742 (rejecting the argument that the phrase "sexual abuse" must be defined by reference to the federal offenses listed in 18 U.S.C. § 2241–2248). Rather, "Congress's use of [the 'relating to'] phrase in § 2252(b)(2) indicates its intent to allow a sentencing court to look beyond the mere elements of a prior state conviction in determining whether such conviction is sufficient to trigger application of the sentence enhancement provisions." *United States v. McCutchen*, 419 F.3d 1122, 1127 (10th Cir. 2005). Because neither context nor history tugs "in favor of a narrower

reading," *cf. Mellouli*, 135 S. Ct. at 1990 (internal quotation marks omitted), we define the phrase "relating to" in § 2251(e) and § 2252(b)(2) broadly. *See Morales*, 504 U.S. at 383.

We now consider whether the specific state offenses at issue here, sections 261.5(d) and 288a(b)(2) of the California Penal Code, are categorically offenses "*relating to*" aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a minor or ward, 18 U.S.C. §§ 2251(e), 2252(b)(2) (emphasis added). Sections 261.5(d) and 288a(b)(2) are crimes that relate to the generic offense "sexual abuse of a minor" as defined in *Estrada-Espinoza*. Although the state offenses lack the mens rea element noted in *Estrada-Espinoza*, 546 F.3d at 1158, this element relates to the culpability of the defendant, not to the impact of the conduct on the minor. The elements relating to the effect of the offense on the minor indicate that under our generic federal statutory rape definition, sexual conduct is abusive when the minor is under 16 and the defendant is four or more years older. Section 261.5(d) and section 288a(b)(2) include these elements, because they proscribe sexual acts between a minor under 16 and a defendant who is 21 years of age or older. Accordingly, the state crimes necessarily involved "conduct that causes physical or psychological harm in light of the age of the victim in question," *Pelayo–Garcia*, 589 F.3d at 1014 (internal quotation marks omitted), and as such, are crimes "relating to . . . sexual abuse." Therefore, they are categorically offenses "relating to" aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a minor or ward, 18 U.S.C. §§ 2251(e), 2252(b)(2).

In reaching this conclusion, we join the Eighth Circuit. In a similar context, the Eighth Circuit concluded that because

the term "relating to" "carries a broad ordinary meaning," a state conviction for lascivious acts with children was an offense "relating to" sexual abuse, even though the state offense did not include the element of physical contact required for the generic federal offenses spelled out in 18 U.S.C. §§ 2241, 2242, or 2243. *United States v. Sonnenberg*, 556 F.3d 667, 670–71 (8th Cir. 2009) (internal quotation marks omitted); *cf. United States v. McGarity*, 669 F.3d 1218, 1262–63 (11th Cir. 2012) (noting that "any perceived difference" between "abusive sexual contact" in § 2251(e) and the state offense of "enticing a minor for indecent purposes," which did not require touching or attempting to touch a minor, "is overcome by our interpretation of the phrase 'relating to'").

Applying this approach, we conclude that the conduct proscribed by section 261.5(d) and section 288a(b)(2) is categorically a conviction "under the laws of any State relating to . . . sexual abuse" for purposes of § 2251(e) and § 2252(b)(2). Because Sullivan's prior conviction categorically relates to sexual abuse as that phrase is ordinarily understood, we conclude the district court properly applied the mandatory minimum enhancement provisions contained in both statutes of conviction.[12]

---

[12] Because we decide the enhancements were proper on this ground, we need not address Sullivan's argument regarding *Descamps* or the government's argument that the same enhancements are also appropriate based on Sullivan's pimping and pandering convictions, *see* Cal. Penal Code §§ 266h(a), 266i(a)(2).

V

Finally, we address the government's argument on cross appeal that the district court erred by sustaining Sullivan's objection to the inclusion of a two-level Guidelines enhancement for obstruction of justice. "In determining whether the district court committed procedural error, we review the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v. Smith*, 719 F.3d 1120, 1123 (9th Cir. 2013).[13] "It would be procedural error for a district court to fail to calculate—or to calculate incorrectly—the Guidelines range." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

Section 3C1.1 of the Guidelines is applicable if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice" with respect to the prosecution of the offense of conviction. U.S.S.G. § 3C1.1. The enhancement applies when the district court finds that the defendant gave materially false testimony at trial with the willful intent to provide false testimony. *United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103 (9th Cir. 2007) (per curiam).

Although the district court did not credit Sullivan's testimony, and concluded that Sullivan had testified untruthfully during the trial, the district court determined that the two-level enhancement for obstruction of justice should

---

[13] Although we have yet to resolve the "intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion," *United States v. Swank*, 676 F.3d 919, 921–22 (9th Cir. 2012), the standard of review is not at issue here.

not be included in Sullivan's offense level. The district court explained its reasoning as follows. First, the district court indicated that the § 3C1.1 enhancement was not applicable because the court was not actually misled. The court explained that "[t]he question is whether or not I was obstructed as far as justice is concerned," and concluded that it was not, and that it "had the responsibility of making credibility determinations under any circumstance." Second, the court noted that "the defendant has the right to testify, and that there is a problem of when you punish, and you punish for that testimony you are in a sense punished twice." Finally, the district court remarked that applying the two-level enhancement would result in a sentencing impact which was "far more than it should be."

None of these concerns is a correct basis for excluding the obstruction of justice enhancement from the calculation of the base offense level. First, conduct that "has the potential for obstructing" the prosecution of the offense is sufficient to warrant enhancement. *United States v. Draper*, 996 F.2d 982, 986 (9th Cir. 1993). Indeed, an application note to the Guidelines states that "providing materially false information to a judge" is conduct to which the enhancement applies. U.S.S.G. § 3C1.1 cmt. n.4(F). Second, the Supreme Court has rejected the view that imposing a penalty for perjury at trial violates the privilege of an accused to testify on his own behalf. As the Supreme Court has explained, "a defendant's right to testify does not include a right to commit perjury," and thus the enhancement penalizes the defendant for perjury, not for testifying. *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). Finally, while the district court has discretion in pronouncing a sentence, it must first correctly calculate the applicable Guidelines range. *See Carty*, 520 F.3d at 993. "The Supreme Court has made clear that the district court

must correctly calculate the recommended Guidelines sentence and use that recommendation as the starting point and the initial benchmark." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Accordingly, the district court erred in its legal analysis of Sullivan's offense level.

Although there are circumstances where an erroneous Guidelines calculation can be harmless, *id.* at 1030 & n.5, this is not one of those cases. If a two-level obstruction enhancement were imposed, Sullivan's Guidelines range would have been 324 to 405 months (as opposed to 262 to 327 months), requiring the district court to provide a greater justification for imposing a below-Guidelines sentence of 300 months. *See id.* at 1031; *see also Carty*, 520 F.3d at 991–92 (noting the district court must explain its reasoning for the extent of a variance).

Because we cannot tell if the district court would impose the same sentence if it applied the correct legal analysis, a remand for resentencing is required. *See Jimenez-Ortega*, 472 F.3d at 1103–04 (explaining that findings regarding factual predicates of an obstruction enhancement must be made by the district court in the first instance).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**