SEABRIGHT, District Judge,
dissenting:
For several reasons, I respectfully disagree with the majority Opinion, and dissent.
I. Overview
First, In re Valenzuela Gallardo, 25 I. & N. Dec. 838 (B.I.A.2012),did not announce a new Board of Immigration Appeals (“BIA”) interpretation that removed a required nexus between an obstructive act and an existing proceeding, thereby rendering its interpretation vague. The majority Opinion concludes that Valenzuela Gallardo raises grave constitutional vagueness concerns by changing a well-settled BIA construction, and gives the BIA an option of applying its “previous interpretation” on remand.- But the majority Opinion relies on a mistaken premise that In re Espinozar-Gonzalez, 22 I. & N. Dec. 889 (B.I.A.1999) (en banc), previously required a nexus to an ongoing investigation or proceeding for a crime of conviction to be “an offense relating to obstruction of justice” for purposes of 8 U.S.C. § 1101(a)(43)(S).[1] In fact, Espinozar-Gonzalez did not (and Valenzuela Gallardo explains why). Valenzuela Gallardo is not a change from BIA precedent — it is a change from this Circuit’s interpretation of BIA precedent.
As explained to follow, Valenzuela Gal-lardo explicitly clarified language in Espinoza-Gonzalez, in light of what the BIA considers to be the Ninth Circuit’s misreading of BIA precedent in Hoang v. Holder, 641 F.3d 1157 (9th Cir.2011). Further, Valertzuela Gallardo specifically reaffirmed In re Batista-Hernandez, 211. & N. Dec. 955 (B.I.A.1997) (en banc), which" held that 18 U.S.C. § 3 — a crime that is indistinguishable from California Penal Code § 32 which is at issue here — is indeed a crime “relating to obstruction of justice.”[2] Valenzuela Gallardo' did not purport to overrule or change the BIA’s prior (and still valid) en banc precedent, although it surely meant 'to trump Hoang. And as the majority Opinion acknowledges, this is the BIA’s prerogative under principles of deference set forth in National Cable & Telecommunications Ass’n v. Brand X Internet Services, 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (“A court’s prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.”) (applying Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984)).
Thus, viewed in proper context, the matter should be analyzed under the familiar Chevron standard where, given a statutory *826 ambiguity, courts defer to an agency’s construction of a statute it administers if its construction “reflects a plausible reading of the statutory text.” Morales-Izquierdo v. Gonzales, 486 F.3d 484, 493 (9th Cir.2007) (en banc) (discussing and applying Chevron).
Second, although the majority Opinion acknowledges that the term “relating to obstruction of justice” in § 1101(a)(43)(S) is ambiguous, it refuses to give deference to the BIA’s reasonable, permissible, and plausible formulation at Chevron step two. But this type of refusal should be reserved for “major” or “extraordinary cases.” See King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2488-89, 192 L.Ed.2d 483 (2015) (explaining that deference under Chevron to an agency’s construction of a statute that it administers “is premised on the theory that a statute’s ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps..... In extraordinary cases, however,. there may be reason to hesitate before concluding that Congress has intended such an implicit delegation”) (quoting Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 159, 120 S.Ct. 1291 (2000)) (emphasis added). And unlike King’s challenge to the Patient Protection and Affordable Care Act, this is not an extraordinary case.
Instead of deferring, the majority applies the canon of constitutional avoidance because it views the BIA’s construction as approaching a constitutional boundary— vagueness — a type of interpretation that it believes Congress could not have intended. But applying the constitutional avoidance doctrine in this instance, where the context calls for an ordinary Chevron analysis, allows the exception to swallow the rule. See, e.g., Nat’l Mining Ass’n v. Kempthorne, 512 F.3d 702, 711 (D.C.Cir.2008) (“[W]e do not abandon Chevron deference at the mere mention of a possible constitutional problem; the argument must be serious.”). The BIA’s formulation (whether a crime “includes the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing criminal investigation or proceeding”) does not raise “grave” constitutional vagueness concerns.
The majority Opinion reasons that without a nexus to an. existing proceeding or investigation, the BIA’s definition fails to indicate the contours of “the process of justice,” thereby presenting grave or serious constitutional concerns. But many obstruction crimes do not require an ongoing or pending proceeding — crimes which are undoubtedly “relating to obstruction of justice” (a term indicating that Congress specifically intended to broaden — not narrow — the scope of qualifying obstruction crimes). Such crimes require a nexus only to a foreseeable or contemplated investigation (e.g., 18 U.S.C. § 1512(b)(1)), or to a specific type of proceeding (e.g., 18 U.S.C. § 1519), or otherwise to “the process of justice” such as by hindering or preventing an offender’s apprehension or arrest (e.g., 18 U.S.C. § 3) and thereby materially interfering with the ability to investigate or prosecute. That is, there is no temporal nexus requirement. The absence of a specific requirement for an ongoing investigation or pending proceeding does not render the BIA’s definition vague, much less create grave constitutional doubts on that score.
Finally, to the extent the constitutional avoidance doctrine can apply to the BIA’s formulation in the current Chevron context, we should apply it differently than the majority Opinion does. If the BIA’s formulation raises serious questions as to vagueness, then — as has been done previously — we should construe the agency’s precedent in a readily-apparent way that is *827 constitutional, not remand with an option for the BIA to apply its previous interpretation. See, e.g., Williams v. Babbitt, 115 F.3d 657, 666 (9th Cir.1997) (“The constitutional questions raised by the [Interior Board of Indian Appeals’] .interpretation are grave____We therefore interpret the Reindeer Act as not precluding non-natives in Alaska from owning and importing reindeer.”); United States v. Stansell, 847 F.2d 609, 615 (9th Cir.1988) (“Because a reasonable limiting construction can be placed on the challenged regulation, we hold that [it] is not substantially over-broad.”).
And the BIA’s formulation can certainly be viewed to include a required nexus— short of a pending or ongoing investigation. The formulation requires an affirmative attempt (ie., an act), with specific intent, to interfere with the process of justice — sufficiently encapsulating the type of nexus or connection required in crimes such as 18 U.S.C. §§ 1512(b)(1), 1519, and 3 (and thus to California Penal Code § 32 at issue here). Valenzuela Gallardo also specifically refers to acts that clearly constitute obstruction — without a pending proceeding or investigation — in giving obvious meaning to the phrase “the process of justice.” See 25 I. & N. Dec. at 841-42 (referring to acts with intent “to hinder or prevent [the principal’s] apprehension, trial or punishment ” and “that [the] principal may avoid or escape from arrest, trial, conviction or punishment ”) (emphasis added). And it reaffirms its en banc precedent further explaining “the process of justice.” See id. at 840 (explaining, that obstruction occurs with an act meant to “prevent[] the arrest of the offender”) (quoting Batista-Hernandez, 21 I & N. Dec. at 961). We need not remand for further explanation.
To follow, I explain these points in more detail.
II. Applying Brand-X, Valenzuela Gal-lardo clarified prior BIA decisions in light of Hoang
It is undisputed that the Immigration and Nationality Act (“INA”) does not provide spécific guidance as to the meaning of “an offense relating to obstruction of justice” in § 1101(a)(43)(S) — that is, the term is'ambiguous. See, e.g., Renteria-Morales v. Mukasey, 551 F.3d 1076, 1086 (9th Cir.2008) (“[Section] 1101(a)(43)(S) does not clearly set forth the elements of the generic federal crime. Because the INA does not define the phrase ‘offense relating, to obstruction of justice,’ we must determine whether there is any binding agency precedent on:point which does define that phrase.”) (citations and some quotation marks omitted); Salazar-Luviano v. Mukasey, 551 F.3d 857, 860 (9th Cir.2008) (“Because Congress itself did not define the phrase ‘offense relating to obstruction of justice’ in the .INA, we defer to the BIA’s ‘interpretation of the elements of a generic obstruction of justice offense under § 1101(a)(43)(S)[.]’ ”) (citation and editorial marks omitted); Hoang, 641 F.3d at 1160 (“Though the United States criminal code includes a chapter entitled ‘Obstruction of Justice,’ 18 U.S.C. §§ 1501-1521, it does not clearly set forth the elements of a generic federal obstruction of justice crime; nor does § 1101(a)(43)(S) provide a generic definition. Consequently, we must determine whether the agency charged with implementing the INA has defined the term.”) (citation and footnote omitted).
Under Chevron, given an ambiguity in a statute that an agency administers, a court “does not impose its own construction of the statute, but rather it decides ‘whether the agency’s answer is based on a permissible construction of the statute.’” Gonzales v. Dep’t of Homeland Sec., 508 F.3d 1227, 1235 (9th Cir.2007) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778). And *828 Brand X “instructed federal courts to defer to reasonable agency interpretations of ambiguous statutes, even when those interpretations conflict with the prior holding of a federal circuit court.” Garfias-Rodriguez v. Holder, 702 F.3d 504, 507 (9th Cir.2012) (en banc) (citing Brand X, 545 U.S. at 982-83, 125 S.Ct. 2688). In other words, “[a] circuit court must apply Chevron deference to an agency’s interpretation of a statute regardless of the circuit court’s contrary precedent, provided that the court’s earlier precedent was an interpretation of a statutory ambiguity.” Gonzales, 508 F.3d at 1235-36 (citing Brand X, 545 U.S. at 980-82, 125 S.Ct. 2688).
In 2011, a majority in Hoang (over a dissent from Judge Bybee) interpreted BIA precedent regarding § 1101(a)(43)(S) to require a pending proceeding or investigation such that a Washington crime of rendering criminal assistance is not an offense “relating to obstruction of justice;” 641 F.3d at 1162-64. Hoang thus concluded that the Washington statute was categorically not an aggravated felony because it potentially criminalized the rendering of criminal assistance “before any investigation or judicial proceeding has begun.” 641 F.3d at 1162. It did so,, however, despite an en banc BIA decision, Batista-Hernandez, which held that a conviction of 18 U.S.C. § 3 (accessory after the fact) “clearly relates to obstruction of justice.” 211. & N. Dec. at 961.[3] Batista-Heman-dez cited “the wording of 18 U.S.C. § 3” and caselaw reasoning that “the nature of being an accessory after the fact lies essentially in obstructing justice and preventing the arrest of the offender.” Id. (citing United States v. Barlow, 470 F.2d 1245, 1252-53 (D.C.Cir.1972)). The BIA reasoned that 18 U.S.C. § 3 “criminalizes actions knowingly taken to ‘hinder or prevent (another’s) apprehension, trial or punishment.’ ” Id.
Hoang relied in part on another BIA en banc decision, Espinoza-Gonzalez, issued two years after Batista-Hemandez. The BIA in Espinoza-Gonzalez (in a decision Written’by Board Member Grant) held that the federal crime of misprision of a felony under 18 U.S.C. § 4 is not “an offense relating to obstruction of justice.” 22 I. & N. Dec. at 892-95.[4] The Hoang .majority analyzed the BIA’s approach to the differences between 18 U.S.C. § 3 and 18 U.S.C. § 4 as follows:
Espinoza-Gonzalez. distinguished misprision of a felony from accessory after the. fact on .the grounds that the latter both “references the specific purpose for which” the act is done, 22 I. & N. Dec. at 894, and. requires “as an element either active interference with proceedings . of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice.” Id. at 895. The BIA stated that “concealment of a crime [as in 18 U.S.C. § 4] is qualitatively different from an affirmative action to hinder or prevent another’s apprehension, trial, or punishment [as in 18 U.S.C. § 3]. It is a lesser offense to conceal a crime where *829 there is no investigation or proceeding, or even an intént to hinder the process of justice — ” Id. at 895 (emphasis added). Taken as a whole, Espinoza-Gonzalez does not suggest that the BIA considered accessory after the fact to be an offense relating to obstruction of justice even though it does not require the defendant to interfere with an ongoing proceeding or investigation. The language used indicates that the BIA now concludes [in Espinozar-Gonzalez ] .that accessory after the fact is an obstruction . of justice crime when it interferes with an ongoing proceeding or investigation.
641 F.3d at 1164.
A year later, the BIA in Valenzuela Gallardo specifically responded to Hoang (in a decision also written by Board Member Grant, the author of Espinoza-Gonzalez ) by explicitly reaffirming Batistar-Hernandez and clarifying Espinoza-Gonzalez. See Valenzuela Gallardo, 25 I. & N. Dec. at 844. The BIA “respectfully invoke[d] the authority in Brand X to clarify [its] prior precedents on the scope of the phrase ‘relating to obstruction of justice.’ ” Id. at 840. In explaining Espinoza-Gonzalez, Valenzuela Gallardo reiterated that the key distinction between 18 U.S.C. § 3 and 18 U.S.C. § 4 is that § 3 “references the specific purposes for the concealment, which are hindering or preventing the ‘apprehension, trial or punishment’ of the principal offender.” Id. at 841 (quoting 18 U.S.C. § 3). In contrast, “nothing in § 4 ... references the specific, purpose^]” Id. (quoting Espinoza-Gonzalez, 22 I. & N. Dec. at 894). Valenzuela Gallardo reasoned:
[W]e. supported this distinction by pointing out that “concealment of a crime is qualitatively different from an affirmative action to hinder or prevent another’s apprehension, trial or punishment.” [Espinoza-Gonzalez, 22 I. & N. Dec.] at 895. We concluded that, misprision does not constitute “obstruction of justice” because “it lacks the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice.” Id. at 896. This element — the affirmative and intentional attempt, with specific intent, to interfere with the process of justice— demarcates the category of crimes constituting obstruction of justice. While many crimes fitting this definition will involve interference with an ongoing criminal investigation or trial, id. at 892-93, we now clarify that the éxistence of such proceedings is not an essential element of “an offense relating to obstruction of justice.”
25 I. & N. Dec. at 841.
In other words, the BIA disagrees with the Hoang majority’s conclusion that “[t]aken as a whole, Espinoza-Gonzalez does not suggest that the BIA considered accessory after the fact to be an offense relating to obstruction of justice even though it does not require the defendant to interfere with an ongoing proceeding or investigation.” Hoang, 641 F.3d at 1164. It disagrees with the Hoang majority’s interpretation that “the BIA now concludes [in Espinoza-Gonzalez ] that "accessory after the fact is an obstruction of. justice crime when it interferes "with an ongoing proceeding or investigation.” Id. Espinoza-Gonzalez never required a crime of conviction to have as an element only “active interference with proceedings of a tribunal;” it always required “either active interference with proceedings of a tribunal or investigation, or action, or threat of action against those who would cooperate in the process of justice.” 22 I. & N. Dec. at 893 (emphasis added).
The purpose of Valenzuela Gallardo, was not to announce a new comprehensive BIA interpretation; it was simply to reaffirm and clarify its precedent, that — despite Hoang — a pending or ongoing investigation -or proceeding is not a necessary ele *830 ment of a crime “relating to obstruction of justice.” 25 I. & N. Dec. at 844. It must be read together with both Batista-Hernandez and Espinozar-Gonzalez as establishing the BIA’s construction of “relating to obstruction of justice.”
Applying the categorical approach to California Penal Code § 32, Valenzuela Gallardo then reasoned that:
The’ provisions of this statute- are closely analogous, if not functionally identical, to those in 18 U.S.C. § 3. Critically, both statutes include the element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice. See 18 U.S.C. § 3 (requiring that the offender act “in order to hinder or prevent [the principal’s] apprehension, trial or punishment”) (emphasis added); Cal.Penal Code § 32 (West 2012) (requiring that the offender act “with the intent that [the] principal may avoid or escape from arrest, trial, conviction or punishment”) (emphasis added)[.]
25 I. & N. Dec. at 841-42. The BIA thus gives meaning to the term “process of justice” by referring to statutes and obstructive acts even without a pending proceeding or ongoing investigation.[5] And it based its decision on the same key factor that it has applied since at least 1999 m Espinoza-Gonzalez — whether a crime has “the critical element of an affirmative and intentional attempt, motivated by specific intent, to interfere with the process of justice.” In this fundamental aspect, the decision was hardly a new interpretation.
Valenzuela Gallardo also considered that § 1101(a)(43)(S) requires only an offense to be “relating to” obstruction of justice, indicating that a broader reading is proper. 25 I. & N. Dec. at 843. And it recognized that the Third Circuit in Denis v. Attorney General, 633 F.3d 201, 209 (3d Cir.2011), considered the phrase “relating to obstruction of justice” to be unambiguous such that a conviction for accessory after the fact in the Third Circuit would necessarily qualify as an obstruction offense under § 1101(a)(43)(S). Reasoning (properly) that “[a]n important purpose of [BIA] precedent is the establishment of a uniform interpretation of law in cases before the Immigration Judges and the [BIA],” id. at 844 (quoting Matter of U. Singh, 25 I. & N. Dec. 670, 672 (B.I.A. 2012)), it concluded that “accessory after the fact offenses necessarily relate to obstruction of justice” irrespective of the existence of an ongoing criminal investigation or proceeding. Id.[6]
*831 In short, this case involves a straightforward application of Chevron. The court should defer to the BIA’s reasonable, permissible, and plausible interpretation of § 1101(a)(48)(S).
III. The use of the constitutional avoidance doctrine in this case undermines Congressional intent
Moreover, in the context now before us — -where it is undisputed that the statutory language is ambiguous — the constitutional avoidance doctrine is an inappropriate framework to disregard the BIA’s interpretation. Certainly, if the BIA’s definition is unconstitutional, then we have the power to strike it or make such a declaration. But Morales-Izquierdo, an’ en banc opinion of this court, • in no uncertain terms reasons that “the constitutional avoidance doctrine ... plays no role in the second Chevron inquiry.” 486 F.3d at 493. That is,
we are not deciding between two plausible statutory constructions; we are evaluating an agency’s interpretation of.a statute under Chevron. At step two of this inquiry, our function is “not simply [to] impose [our] own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, ... the question for-the court is whether the agency’s answer is based on a permissible construction of the statute.” When Congress has explicitly or implicitly left a gap for an agency, to fill, and -the agency has filled it, we have no authority to re-construe the statute, even to avoid potential constitutional problems; we can only decide whether the agency’s interpretation reflects a plausible reading of the statutory text.
Id. at 492-93 (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778) (emphasis added) (brackets and ellipses in original).[7]
Rather than giving deference to the BIA’s permissible formulation, the majority Opinion (avoiding Morales-Izquierdo’s logic) relies on authority indicating that constitutional avoidance can apply at Chevron step one. See, e.g., Morales-Izquierdo, 486 F.3d at 504 (“The avoidance canon ... is properly applied at step one of the Chevron analysis. While ... the avoidance canon cannot’ be used to render an agency’s interpretation ‘unreasonable’ at Chevron step two, the canon is unquestionably a ‘traditional tool of statutory interpretation’ that'may and should be used to determine whether Congress intended to preclude the agency’s chosen interpretation.”) (citations omitted) (Thomas, C.J., dissenting); but cf. Olmos v. Holder, 780 F.3d 1313, 1321 (10th Cir.2015) (“[T]he *832 canon on constitutional avoidance does not bear on our inquiry at step one.”).
That is, although the majority Opinion acknowledges that the term “relating to obstruction of justice” is ambiguous, it applies the canon of constitutional avoidance because Congress could not have intended an agency construction that approaches a constitutional, boundary without some indication allowing such a construction. But this reasoning utterly disregards the term “relating to,” which indicates a broad interpretation — meaning Congress intended to include not, only crimes that actually constitute “obstruction of justice,” but also crimes that are “relating to” such crimes. See, e.g., Rodriguez-Valencia v. Holder, 652 F.3d 1157, 1159 (9th Cir.2011), (“When interpreting the.INA, we construe the ‘relating to’ language broadly.'”) (quoting Luu-Le v. I.N.S., 224 F.3d 911, 915 (9th Cir.2000) (some quotation marks omitted)).
. , For example, in analyzing an aggravated felony statute, 8 U.S.C. § 1101(a)(43)(R) (including as an aggravated felony an. “offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles ... for which the term of imprisonment is at least one year”), Albillo-Figueroa v. I.N.S., 221 F.3d 1070 (9th Cir.2000), held that the clause “relating to” “necessarily covers a range of activities beyond those of counterfeiting or forgery itself.” Id. at 1073. As Kamagate v. Ashcroft, 385 F.3d 144 (2d Cir.2004), reasoned, “the phrase ‘relating to’ ... is [often] used [in the INA] ... ’to define aggravated felonies by reference to the general subject of the offense of conviction, suggesting Congress’s intent to reach more broadly than any single statute.” Id. at 154 (citing 8 U.S.C. §§ 1101(a)(43)(K)(i), (Q), (S), and (T)).[8]
Thus, by using the term “relating to” in § 1101(a)(43)(S), Congress intended to reach a wide spectrum of obstruction crimes, even those that may reach near to the limits of congressional authority. It surely meant to include more than crimes constituting obstruction of justice, not just some of them.
The exception “to hesitate before concluding that Congress has intended such an implicit delegation,” should be reserved for major or “extraordinary cases.” See Brown & Williamson, 529 U.S. at 159, 120 S.Ct. 1291 (“In extraordinary cases, however, there may be reason to hesitate before concluding that Congress has intended such an implicit delegation.”) (emphasis added) (citing Stephen Breyer, Judicial Review of Questions of Law and Policy, 38 Admin. L.Rev. 363, 370 (1986)). And, although the issues we face regarding the meaning of “relating to obstruction of justice” have proven to be challenging, this is not ' an extraordinary case. Compare King, 135 S.Ct. at 2489 (upholding the Patient Protection and Affordable Care Act despite statutory ambiguity because “[t]his is one of those [extraordinary] cases”) (referring to Brown & Williamson, 529 U.S. at 159, 120 S.Ct. 1291). Because this is not such a case, the BIA is owed deference. And applying the constitutional avoidance- doctrine in .this instance— where the constitutional questions are not “serious” (as explained to follow) — invites courts to apply an exception whenever *833 there is statutory ambiguity. Cf. Liu v. Waters, 55 F.3d 421, 426 (9th Cir.1995) (“[W]e must not allow [an] exception for constitutional questions to swallow the rule.”).
The majority Opinion correctly states that we must ask whether Congress intended to permit the agency interpretation, and the doctrine of constitutional avoidance can sometimes aid in this task. But by reading the term “relating to” out of the statute, the majority Opinion ignores true Congressional intent. That is, because Congress’ use of the term “relating to” demonstrates intent to broaden the scope of covered obstruction-related crimes, the doctrine should not be employed to narrow the scope of covered crimes. In short, the majority Opinion’s use of the doctrine as applied here does not further Congressional intent but instead undermines it.
IV. The BIA’s construction does not present “serious” or “grave” constitutional concerns
More'to the'point, even examining the BIA’s construction at- Chevron step one, the constitutional avoidance doctrine only applies to truly “serious” constitutional questions. See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council, 485 U.S. 568, 577, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988); Williams, 115 F.3d at 662 (“Only if the agency’s proffered interpretation raises serious constitutional concerns may a court refuse to defer under Chevron.”). They must be “grave.” Rust v. Sullivan, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); Williams, 115 F.3d at 663 (“[Constitutional narrowing should displace Chevron only whén the constitutional problems are truly ‘grave’ ... because all possible interpretations raise constitutional problems.”). “[T]he ‘constitutional doubt’ doctrine does not apply mechanically whenever there arises a significant constitutional question the answer to which is not obvious.” Almendarez-Torres v. United States, 523 U.S. 224, 239, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). That is, “we do not abandon Chevron deference at the mere mention of a possible constitutional problem[.]” Kempthorne, 512 F.3d at 711. “An agency’s 'interpretation may be perihissible even if it would create co’n-stitutional issues.” Olmos, 780 F.3d at 1322-23 (citing Morales-Izquierdo, 486 F.3d at 493).
Here, the BIA’s interpretation in Valenzuela Gallardo does not approach the void-for-vagueness line, it .is true that obstruction of justice crimes punishing acts intended to impede “the due administration of justice,” such as the omnibus clause in 18 U.S.C. § 1503(a), have a potentially “vast” coverage. Bonds, 784 F.3d at 583 (Kozinski, J., concurring). But federal obstruction, statutes are not unconstitutionally vague where they include a mens rea of “corruptly persuade” or “corruptly endeav or,”. See, e.g., United States v. Jeter, 775 F.2d 670, 679 (6th Cir.1985) (rejecting that ¡18 . U.S.C. § 1503 is . unconstitutionally overbroad or vague given “its. explicit mens rea requirement that a person must ‘corruptly endeavor to interfere with the due administration of-justice. Thus, one must impede the due administration of justice with the general intent of knowledge as well as the specific intent of purpose to obstruct”) (citations omitted); United States v. Shotts, 145 F.3d 1289, 1300 (11th Cir.1998) (rejecting vagueness challenge to 18 U.S.C. § 1512(b), reasoning in part that “ ‘corrupt’ is a scienter -requirement which provides adequate notice of what.conduct is proscribed”) (citing United States v. Thompson, 76 F.3d 442, 452 (2d Cir.1996)).
Under Ninth Circuit law, “corruptly” in this context means that the obstructive conduct “must be done with the purpose of obstructing justice.” United States v. *834 Rasheed, 663 F.2d 843, 852 (9th Cir.1981); United States v. Laurins, 857 F.2d 529, 536-37 (9th Cir.1988).[9] And this definition of “corruptly” is the functional equivalent to the BIA’s language at issue here (“the affirmative and intentional attempt, with specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing, criminal investigation or proceeding”). That is, the BIA requires a “corrupt” mens rea in its construction.
The majority Opinion reasons that without a nexus to pending or ongoing proceedings — as the Ninth Circuit in Hoang had interpreted Espinoza-Gonzalez — the meaning of “the process of justice” is vague (or approaches that line). And it is true that many, if not all, obstruction crimes require some connection between the" obstructive act and a “proceeding.” See Arthur Andersen LLP v. United States, 544 U.S. 696, 707-08, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005) (indicating that a nexus to a foreseeable or contemplated proceeding might suffice under 18 U.S.C. § 1512). ’But in my view, because a pending proceeding does not create the necessary connection, the BIA’s definition is not missing the required nexus. If a person specifically interferes with an ongoing investigation, then the requisite specific purpose of an obstructive act is obvious. But obstruction does not require the investigation or. proceeding to be pending. “Pending” is sufficient, but not necessary. And its absence does not render the definition unconstitutionally vague..
Rather, what is necessary is a' connection to some contemplated “process of justice” that encompasses an “evil intent to obstruct.” United States v. Aguilar, 515 U.S. 593, 599, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (“[A] person lacking knowledge of a pending proceeding necessarily lacked the evil intent to obstruct.”) (citing Pettibone v. United States, 148 U.S. 197, 207, 13 S.Ct. 542, 37 L.Ed. 419 (1893)). This “evil intent” is adequately articulated by the BIA as “an affirmative and intentional attempt, with specific intent, to interfere with the process of justice.” Moreover, Valenzuela Gallardo (as well as Batista-Hemandez and Espinoza-Gonzalez) describes or refers to “the process of justice” as including arrest, apprehension, conviction, or punishment. See 25 I. & N. Dec. at 841-42. Valenzuela Gallardo also refers to specific federal obstruction crimes, as detailed to follow, that do not require proceedings to be pending, and that also give further meaning to “the process of justice.”
A. Crimes Under 18 U.S.C. § 1512
Prime examples of federal obstruction crimes that do not require “pending proceedings” are witness-tampering crimes set forth in 18 U.S.C. § 1512 such as:
• 18 U.S.C. § 1512(b) .(“Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to — (1) influence, delay, or prevent the testimony of any person in an official proceeding”); and
• 18 U.S.C. § 1512(c) (“Whoever corruptly — (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, witli the intent to impair the object’s integrity or availability for use in an official proceeding; or' (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined *835 under this title or imprisoned not more than 20 years, or both.”).
Although these crimes require some connection to an “official proceeding,” they do not require it to be pending. See 18 U.S.C. § 1512(f)(1) (“For the purposes of this section ... an official proceeding need not be pending or about to .be instituted at the time of the. offense”). Congress adopted this language to encompass a perpetrator’s actions even before an inves-. tigation has begun. Legislative history explains:
.[Section 1512(f)(1) ] obviates the requirement that there be an official proceeding in progress or pending. The Committee felt that this increases the scope of the section by expanding the galaxy of witnesses and victims the protections of its language is meant to embrace. Intimidation offenses are particularly insidious and do violence to traditional notions of justice because no one can be convicted of a crime which is not reported. Subsection [(f)(1)], among other things, specifically reaches intimidation offenses before a crime is reported to the appropriate authorities:
Judiciary Comm., 97th Cong., Victim and Witness Protection Act of 1982, S.Rep. No. 97-582, at 19 (1982), reprinted in 1982 U.S.C.C.A.N. 3 (emphasis added).
That is, although the government must still connect the obstructive act to an official proceeding under §, 1512(b)(1), see Arthur Andersen, 544 U.S. at 707-08, 125 S.Ct. 2129, the nexus does not have to be to an ongoing proceeding. Rather, it requires proof under § 1512(b)(1) of a foreseeable or contemplated proceeding. See id. (“It is, however, one thing to say that a proceeding ‘need not be pending or about to be instituted at the time of the offense,’ and quite another to say a proceeding need not even be foreseen. A ‘knowingly ,.. corrup[t] persuade[r]’ cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material.”); see also United States v. Friske, 640 F.3d 1288, 1292 n. 5 (11th Cir.2011) (“Consistent with Aguilar’s nexus requirement, the government must prove [under § 1512(c)(2) ] that the defendant-knew of or foresaw an official proceeding, and knew that his actions were likely to affect it.”).
Other obstruction of justice crimes in § 1512 do not even require an “official proceeding:”
• 18 U.S.C. § 1512(d)(2) (“Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from .,. reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense ----or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.”); and
•■18 U.S.C. § 1512(b)(3) (“Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading, conduct toward another person, with intent to ... hinder, delay, or prevent the communication to ,a law enforcement officer or judge of the, United States of information relating to the commission or possible commission of a Federal offense ... shall be fined under this title or imprisoned not more than-20 years, or both.”).
These sections “make[] no mention of ‘an official proceeding and do[] not require that a defendant’s misleading conduct relate in any way either to an ‘official proceeding’ or even to a particular ongoing investigation.” United States v. Ronda, 455 F.3d 1273, 1288 (11th Cir.2006). “[Section] 1512(b)(3) requires only that a *836 defendant intended to hinder, delay, or prevent communication to any ‘law enforcement officer or judge of the United States’ [and thus] requires only ‘the possible existence of a federal crime and a defendant’s intention to thwart an inquiry into that crime.’” Id. (quoting United States v. Veal, 153 F.3d 1233, 1250 (11th Cir.1998)), See also, e.g., United States v. Guadalupe, 402 F.3d 409, 411 (3d Cir.2005) (“[P]roving a violation of 18 U.S.C. § 1512(b)(3) does not depend on the existence or imminency of a federal investigation but rather on the possible existence of a federal crime and a defendant’s intention to thwart an inquiry into that crime'by officials who happen to be federal.”) (emphases added); United States v. Baldyga, 233 F.3d 674, 680 (1st Cir.2000) (noting that defendant’s conduct violated § 1512(b)(3) where he hindered government cooperator’s “communication with authorities” and where “the possibility existed that such communication would eventually occur with federal officials”) (emphasis added).
These types of obstruction crimes, while not requiring a nexus’ to a pending proceeding, can fairly and reasonably be said to require a specific intent to interfere with “the process of justice.” See, e.g., United States v. Byrne, 435 F.3d 16, 24 (1st Cir.2006) (“[S]ubsection (b)(3) ‘does not connect the federal interest with- an ongoing or imminent judicial proceeding,’ but rather- ‘speaks more broadly’ to -‘the character -of -the affected activity, the transmission of information to federal law enforcement agents[.]’ ”) (quoting Veal, 153 F.3d at 1250-51). See also United States v. Phillips, 583 F.3d 1261, 1264 (10th Cir.2009) (“[I]n terms of the Aguilar nexus requirement,-a conviction is proper [under § -1512(c) ] if interference with the official proceeding is the ‘natural and probable effect’ of the defendant’s conduct.”); Friske, 640 F.3d at 1292 (“Aguilar relied on the principle that ‘a person lacking knowledge of a pending proceeding necessarily lack[s] the evil intent' to obstruct.’ ”) (quoting Aguilar, 515 U.S. at 599, 115 S.Ct.2357).
B. Another example — 18 U.S.C. § 1519
Another example is destroying documents intending to obstruct a federal investigation under 18 U.S.C. § 1519. This obstruction crime has a very specific mens rea. It criminalizes the knowing alteration, destruction,, mutilation, etc., of records, documents, or “tangible objects,” intending to obstruct the investigation or proper administration of matters within federal jurisdiction.[10] Section 1519 “covers conduct intended to impede any federal investigation or proceeding including one not even on the verge of commencement.” Yates v. United States, —— U.S. -, 135 S.Ct. 1074, 1087, 191 L.Ed.2d 64 (2015) (emphasis added). See also United States v. Gray, 642 F.3d 371, 379 (2d Cir.2011) (“[Section] 1519 does not require thé existence or likelihood of a federal investigation.”); United States v. Moyer, 674 F.3d 192, 210 (3d Cir.2012) (“[The government] was not required to prove that [Defendant] intended tó obstruct or impede a specific federal investigation.”). “To ensure that *837 the statute is applied ‘broadly,’ criminal liability ‘also extends to acts done in contemplation of. such federal matters, so that the timing of the act in relation to the beginning of the matter or investigation is also not a bar to prosecution.’” Moyer, 674 F.3d at 210 (quoting S.Rep. No. 107-146, at 13 (2002)); see also United States v. Yielding, 657 F.3d 688, 711 (8th Cir.2011) (similar reasoning).[11]
Section 1519 is not vague. “Section 1519’s scienter requirement ... eliminates any concerns regarding statutory vagueness.” Moyer, 674 F.3d at 211. Specifically, “[bjecause a defendant will be convicted for violating § 1519 ‘only for an-act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge , that the act which he does is a violation of law.’ ” Id. at 212 (quoting Screws v. United States, 325 U.S. 91, 102, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). “Here, by the express language of [§ 1519], no liability will be imposed for knowingly falsifying documents without an ‘intent to impede, obstruct, or influence a matter/” Id.
In rejecting a vaguenéss challenge to § 1519, Yielding reasoned that “the statute does not impose liability for ‘knowingly ... destroying] ... any ... document ...' in ... contemplation of any [federal] matter,’ without an intent to impede, obstruct, or influence a matter. If it did, then the statute would forbid innocent conduct such as routine destruction'of documents that a person consciously and in good faith determines are irrelevant to a foreseeable federal matter.’? 657 F.3d at 711 (editorial mark;s in original). Yielding concluded; “[t]he plain-language of the statute forbids the knowing falsification of a document with the .-intent to-impede,. obstruct, or influence the investigation or proper , administration of a federal matter, even if that.matter is not pending at the time of the -obstructive act.” Id. at 715. See also United States v. Kernell, 667 F.3d 746, 753-56, (6th Cir.2012) (rejecting vagueness challenge to § 1519); United States v. Hunt, 526 F.3d 739, 743 (11th Cir.2008) (same).
Similarly, Valenzuela Gallardo’s formulation — affirmative and . intentional attempt, motivated by a specific intent, to interfere with the process of justice, irrespective of the existence of an ongoing criminal investigation or proceeding — encompasses acts done , with the .purpose of impeding or obstructing justice. See, e.g., Rasheed, 663 F.2d at 852. That is., like § 1519’s requirement to intend to influence “the investigation or proper administration of any [federal] matter,” the BTA’s formulation requires a specific intent to interfere with the process of justice “irrespective of the existence of an ongoing criminal investigation or proceeding.”
*838 C. The majority Opinion’s other criticisms do not help its vagueness analysis
In discussing vagueness, the majority Opinion also faults the BIA for providing little instruction as to the requisite actus reus, with no indication of what conduct must ■ be interfered with. But the BIA requires “affirmative action knowingly undertaken,” 25 I. & N. Dec. at 840 (quoting Espinoza-Gonzalez, 22 I. & N. Dec. at 894) (emphasis added) — that is, an act— and Espinoza-Gonzalez further defines the actus' reus as “either active interference with proceedings ■ of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice.” 22 I. & N. Dec. at 893 (emphasis added). As the Eighth Circuit reasons, the BIA has not eliminated an actus reus.. See Armenta-Lagunas, 724 F.3d at 1024 (“To satisfy the actus reus element, the statute of conviction simply must require an active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice.”).
Applying the categorical approach, California Penal Code § 32 includes as elements specific instances of conduct that interfere with the process of justice (“harbors, conceals or aids a principal ... with the intent that said principal may avoid or escape from arrest, trial, conviction, or punishment[.]”). Petitioner’s California conviction was for a crime that necessarily requires “an affirmative and intentional attempt, motivated'by a specific intent, to interfere with the process of justice, irrespective of .the existence of an ongoing criminal investigation or proceeding.”
And the majority Opinion’s citation to Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), does not support its conclusion that the BIA’s construction raises grave doubts as to vagueness. Johnson concluded that the Armed Career Criminal Act’s (“ACCA”) “residual clause,” which defines a “violent felony” as “any crime punishable by imprisonment for a term exceeding one year ... that .... ‘otherwise involves conduct that presents a serious potential risk of physical injury to another,’” 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S.Ct. at 2557. Unlike Johnson, for the reasons just stated, the BIA’s formulation provides objective standards (it does not eliminate a required nexus, and adequately explains a connection to “the process of justice), and requires analyzing statutory definitions — not “judge-imagined abstraction[s].’” Johnson, 135 S.Ct. at 2558. Moreover, Johnson declared -the residual clause vague not only because of its indeterminancy, but because of a long history by the Supreme Court and other courts of “repeated attempts and repeated failures to craft a principled and objective standard out of’ its language. Id. There was a “pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider” among lower courts. Id. at 2560. Nothing like that is involved with the BIA’s formulation. Johnson addressed vagueness as to the specific language of the residual clause by applying settled principles[12] — it provides no support for questioning, on *839 vagueness grounds, the BIA’s construction of § 1101(a)(43)(S).
V. If applicable, we should apply constitutional avoidance differently
Finally, even if the constitutional avoidance doctrine should be applied to the situation before us, we should .apply it differently than how the majority Opinion does. When presented with grave doubts as to the constitutionality of a regulatory interpretation, courts should read the interpretation narrowly in a readily-apparent way to avoid the constitutional issue. See, e.g., Williams, 115 F.3d at 666; Stansell, 847 F.2d at 615 (“Because a reasonable limiting construction can be placed on the challenged regulation, we hold that [it] is not substantially overbroad.”) (emphasis added); Meinhold v. United States Dep’t of Defense, 34 F.3d 1469, 1479 (9th Cir.1994) (“[T]he regulation under which Meinhold was processed need not be construed so broadly as to raise constitutional concerns. It can reasonably be construed to reach only [constitutional grounds]..”); United States v. Bulacan, 156 F.3d 963, 974 (9th Cir.1998) (similar); cf. Ma v. Ashcroft, 257 F.3d 1095, 1106 (9th Cir.2001) (“In the immigration context, courts have often read limitations into statutes that appeared to confer broad power on immigration officials in order to avoid constitutional problems.”). Put differently, “our task is not to destroy the Act ... but to construe it, if consistent with the will of Congress, so as to comport with constitutional limitations.” U.S. Civil Serv. Comm’n v. Nat’l Ass’n of Letter Carriers, AFL-CIO, 413 U.S. 548, 571, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).
In Edward J. DeBartolo Corp., when faced with a National Labor Relations Board’s (“NLRB”) interpretation that presented serious First Amendment questions, neither the Eleventh Circuit nor the Supreme Court remanded the action to the NLRB to promulgate a different interpretation — the Eleventh Circuit construed it “as not prohibiting consumer publicity.” 485 U.S. at 574, 108 S.Ct. 1392. Edward J. DeBartolo Corp. concluded, “as did the [Eleventh Circuit], that the section is open to a construction that obviates deciding whether a congressional prohibition of handbilling ... would violate the First Amendment.” Id. at 578, 108 S.Ct. 1392.
Likewise, in Williams, the Ninth Circuit did not instruct the district court to remand the interpretation to the agency to allow it to reconsider its interpretation in a manner that did not violate equal protection, or come close to that line. Rather, given an agency interpretation that presented- grave constitutional questions, Williams then “interpreted] the Reindeer Act as not precluding non-natives in Alaska from owning and importing reindeer.” 115 F.3d at 666.
And so, even if Valenzuela Gallardo raises serious constitutional questions about vagueness, rather than remanding to the BIA, we can give the definition a limiting construction and construe it to include the necessary nexus where such a construction is readily apparent. And Valenzuela Gallardo can certainly be properly construed to fully encompass crimes “relating to obstruction of justice.” The BIA meant to include crimes with an element of interfering with “the process of justice,” such as preventing or impeding a principal’s apprehension, trial, or punishment. Valenzuela Gallardo, 25 I. & N. Dec. at 841. Such a meaning is obvious from Valenzuela Gallardo, especially when read in conjunction with the BIA’s en banc decisions in Batista-Hemandez and Espinoza-Gonzalez, both of which Valenzuela Gallardo explicitly referred to when “reaffirming” and “clarifying” them. Id. at 844. There is no reason to remand.[13]
*840 For the foregoing reasons, I respectfully dissent.

. 8 U.S.C. § 1101(a)(43)(S) provides that "[t]he term'‘aggravated felony’ means' ... an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year[J”

. California Penal Code § 32 provides that ‘‘[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony,”

. 18 U.S.C. § 3 ("Accessory after the fact”) provides in pertinent part:
Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

. 18 U.S.C. § 4 ("Misprision of felony”) provides:
Whoever,' having knowledge of the actual commission of á felony cognizable by a court of the United States, conceals and does not as soon as possible malee known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

. Furthermore, "hindering or preventing” a principal’s “apprehension, trial, or punishment” satisfies a "materiality” requirement that may be necessary to satisfy vagueness concerns with some obstruction crimes. See, e.g., United States v. Bonds, 784 F.3d 582, 585 (9th Cir.2015) (en banc) (Kozinski, J., concurring).

. After Valenzuela Gallardo was issued in 2012, the Eighth Circuit similarly interpreted Espinoza-Gonzalez to mean that a Nebraska witness-tampering statute (Neb.Rev.Stat. § 28-919(1)) is a crime "relating to obstruction of justice” for purposes of § 1101(a)(43)(S). See Armenta-Lagunas v. Holder, 724 F.3d 1019, 1022-24 (8th Cir.2013). Although Armenta-Lagunas did not specifically address vagueness or whether a pending proceeding is required, it found nothing uncertain about the BIA's formulation:
[T]he offenses entitled "Obstruction of Justice" all required "the critical element of an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice.” [Espinoza-Gonzalez, 22 I. & N. Dec.] at 894. "In other words ... it must include as elements both (1) the actus reus of an 'active interference with proceedings of a tribunal or investigation, or action or threat of action against those who would cooperate in the process of justice,' and (2) the mens rea of a ‘specific intent to interfere with the process of justice.’ ” Higgins v. Holder, 677 F.3d 97, 102 (2d Cir.2012) (quoting Espinoza-Gonzalez, 22 I. & N. Dec. at 893).
724 F.3d at 1022.
*831 Similarly, the Second Circuit in Higgins concluded that a Connecticut witness-tampering statute (Conn.Gen.Stat. § 53a-151) is a crime "relating to obstruction of justice,” See 677 F.3d at 105-06 (citing Espinoza-Gonzalez). And in United States v. Gamboa-Garcia, 620 F.3d 546 (5th Cir.2010), the Fifth Circuit held the same for an Idaho accessory statute (Idaho Code § 18-205). See id. at 550.
Notably, the witness-tampering statutes analyzed in Armenta-Lagunas and Higgins both require a perpetrator to “believ[e] that an official proceeding” "is pending or about to be instituted." Armenta-Lagunas, 724 F.3d at 1023 (emphasis added); Higgins, 677 F.3d at 104 (same). Likewise, Idaho Code § 18-205, analyzed in Gamboa-Garcia, does not refer to a pending proceeding. The majority Opinion’s approach is thus inconsistent with the Second (Higgins), Fifth (Gamboa-Garcia) and Eighth Circuits (Armenta-Lagunas) — creating or perpetuating a circuit split.

. See also Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir.2008) ("[T]he doctrine is unavailing to petitioner, because, as the Ninth Circuit held, once an ambiguous statute has been interpreted by the agency in charge of its implementation, we lack the ‘authority to re-construe the statute, even to avoid potential constitutional problems.’ ”) (quoting Morales-Izquierdo, 486 F.3d at 493).

. Contrary to the majority's view, Mellouli v. Lynch, 135 S.Ct. 1980, 1990 (2015) (cautioning that courts may not extend "relating to” “to the furthest stretch of [its] indeterminacy” where language and historical context "tug in favor of a narrower reading”) does not change this reasoning. See United States v. Sullivan, 797 F.3d 623, 639 (9th Cir.2015) ("[W]e interpret the phrase ‘relating to’ broadly ..‘. unless the text and history of the statute require a narrower construction,”) (some editorial marks and citation omitted) (discussing Mellouli), petition for cert. filed (U.S. Jan. 28, 2016) (No. 15-7875). Nothing here “tugs in favor of a narrower reading” as was analyzed in Melloidi.

. Cf. 18 U.S.C. § 1515(b) ("As used in section 1505, the term "corruptly” means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.”).

. Section § 1519, entitled "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy,”- provides:
Whoever knowingly alters, destroys, muth . lates, conceals, covers up, falsifies, or makes a false entry in any record, docu- ' 'ment, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration’ of any matter within the jurisdiction of any department or ■ agency- of the United States or any case filed under title 11, or . in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both. ■

. Indeed, several Circuits have held that no “nexus" (as that term is used in Aguilar and Arthur Andersen) is required at all under § 1519. See Yielding, 657 F.3d at 712 (“We conclude that the ‘nexus' requirement urged by Yielding — that the government must show the accused knew his actions were likely to affect a federal matter — does not apply to a prosecution for the knowing falsification of documents under § 1519. The text of § 1519 requires only proof that the accused knowingly committed one of several acts, including falsification of a document, and did so ‘with the intent to impede, obstruct, or influence the investigation or proper administration'- of a federal matter.”); Gray, 642 F.3d at 378 ("In view of the statute.'s plain language, which is fully consistent with the legislative history, we decline to read any such nexus requirement into the text of § 1519.”); Moyer, 674 F.3d at 209 (“We conclude that proof osuch a nexus is not -required.”). Nevertheless, cases speak in terms of "foreseeable” or "contemplated" proceedings. See Yielding, 657 F.3d at 711; Moyer, 674 F.3d at 210.

. Johnson concluded that the ACCA’s residu- • al clause is unconstitutional because of two flaws — uncertainty as to: 1) how to estimate the risk posed by a crime in an "ordinary case,” and 2) how much risk is required for a crime to qualify. 135 S.Ct. at 2557-58. And the residual clause contains a list of exemplar crimes, causing further confusion. Id. at 2558. But the residual clause’s flaws simply don’t exist with the BIA’s definition requiring a specific intent to interfere with the process of justice.

. The majority Opinion states that the government’s supplemental briefing requested a *840 remand so that the BIA could consider an alternative definition. But the government’s request was a fallback, apparently, contingent on the panel deciding at Chevron step two that the BIA’s definition is “unreasonable.” See Resp’t’s Suppl.’Mém. at 10 (“If the panel decides, however, the Board's definition is unreasonable this Court should remand for the Board to provide an alternative definition of the ambiguous phrase.”). Although we certainly, have the power to do so, it is inappropriate to remand to the BIA in this in-stánce.