NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID JAMES CHANDLER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12759
Trial Court No. 4FA-15-00586 CR

O P I N I O N

No. 2701 — April 23, 2021

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Bethany S. Harbison, Judge.

Appearances:  Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before:  Allard, Chief Judge, Mannheimer, Senior Judge,[*] and McCrea, District Court Judge.[**]

Judge MANNHEIMER.

---

[*]  Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

[**]  Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

David James Chandler appeals his conviction for possession of child pornography. He asserts that the primary evidence against him — computer files containing child pornography — was obtained illegally and should therefore be suppressed.

Chandler presents two main arguments in favor of suppression.

Chandler's first argument is that his probation officer violated his rights when she seized the computer devices from Chandler's residence. Chandler concedes that he was on probation from an earlier conviction for possessing child pornography, and that his conditions of probation authorized his probation officer to search his computers and related electronic storage devices for evidence of child pornography. However, Chandler argues that his probation officer exceeded her authority when she *seized* these devices (by removing them from Chandler's home) to facilitate the search of their contents.

Second, Chandler argues that even if his probation officer's seizure of the computer devices was lawful, the probation officer (and the State Trooper forensic examiners who later assisted the probation officer in searching the computers) kept the computer devices in their possession for an unreasonably long time before the Troopers secured a search warrant for the devices.

As we explain more fully in this opinion, Chandler failed to preserve his claim that the initial seizure of his computer devices was unlawful. Chandler entered into a *Cooksey* plea agreement with the State; under the terms of this agreement, the sole issue preserved for appeal was, "Did the seizure of Mr. Chandler's computers become unreasonable due to the delay in securing a search warrant?"

Turning, then, to Chandler's claim that the State held onto his computer devices for an unreasonably long period of time before securing a search warrant, we conclude that this claim is based on a misunderstanding of the law.

The cases that Chandler relies on — as well as the earlier cases that *those* cases rely on — all deal with situations where the police seize property without a warrant because they have probable cause to believe that it contains evidence of a crime, *and there is no applicable exception to the warrant requirement.* In such circumstances, the police are only authorized to temporarily hold the property (for the purpose of safeguarding it) until they can secure a warrant — and the police must promptly seek a warrant, or else their continued possession of the property will violate the warrant clause of the constitution. [1]

But these cases do not apply to Chandler's case, because Chandler's computers were seized and searched under a recognized exception to the warrant requirement — the probation search exception.

It is true that, after the State Troopers conducted their initial forensic examination of Chandler's computers and found child pornography images, the Troopers decided to apply for a warrant before they resumed their search of the computers. But as we explain in this opinion, the Troopers did not seek this warrant because they thought it was necessary to authorize their continued possession of Chandler's computers. Rather, the Troopers sought the warrant out of an abundance of caution — to prevent Chandler from later claiming that, because of the Troopers' discovery of the child pornography, the Troopers improperly expanded the scope of their search beyond the boundaries of the search authorized by Chandler's conditions of probation.

So long as the Troopers confined their search to the boundaries authorized by the conditions of Chandler's probation, they did not need this search warrant to authorize their continued possession of, and search of, Chandler's computers.

---

[1] *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Moore v. State*, 372 P.3d 922 (Alaska App. 2016).

(And as it turned out, even after the Troopers secured this warrant and resumed their search, they only found more evidence that Chandler possessed child pornography. Thus, all the evidence that supported the charges in this case would have been lawfully obtained even if the Troopers had never secured the search warrant.)

For these reasons, we affirm Chandler's conviction.

*Underlying facts*

In 2013, Chandler was convicted of possessing child pornography. He served time in prison, and then he was released on probation. Chandler's conditions of probation required him to submit to searches of his residence and any of his personal computers for "sexually explicit material", which was defined to include "child erotica, sexually graphic anime, [and] adult and/or child pornography".

On April 9, 2014 (while Chandler was still on probation), two Fairbanks probation officers came to Chandler's residence to perform a probation search. Chandler's father answered the door and let the officers in. When Chandler came out of his bedroom and saw the probation officers, he furtively slipped an external computer hard drive into his pants pocket.

One of the probation officers, Jenelle Moore, observed Chandler's action. Based on this observation, she decided to seize Chandler's two laptop computers, as well as three external hard drives.

Moore brought these items to her office, where she enlisted a computer technician to help her search the computers and the hard drives. When the computer technician performed a cursory search of these devices, he found sexually graphic anime — *i.e.*, cartoons depicting characters in "sexual poses [and] scenarios". Special

Condition 20 of Chandler's conditions of probation expressly prohibited him from possessing "sexually graphic anime". [2]

The computer technician also examined Chandler's internet browsing history and found indications that Chandler had been searching for child pornography — *i.e.*, browser queries that contained the words "teen" and "young".

At this point, Moore decided that any further search of Chandler's devices should be conducted by more experienced forensic examiners. She contacted the local State Troopers, and an investigator was assigned to Chandler's case. A few days later, this investigator came to Moore's office to pick up Chandler's computer devices, and the devices were then shipped to the State Trooper Technical Crimes Unit in Anchorage.

At this time (*i.e.*, April 2014), the Technical Crimes Unit had a backlog of requests for computer examinations, and a shortage of forensic examiners to perform these examinations. Because of this backlog, a forensic examiner was not assigned to Chandler's case until mid-June (*i.e.*, about seven weeks after the Technical Crimes Unit received Chandler's computers).

This forensic examiner, Jeff Mills, immediately began his examination of Chandler's computer devices. Within four days, Mills discovered images of child pornography on Chandler's devices. When Mills informed his supervisor of this discovery, the supervisor instructed Mills to suspend his examination of Chandler's devices and to contact the Trooper investigator in Fairbanks, so that this investigator could apply for a search warrant that expressly authorized a search for all evidence relating to Chandler's possession of child pornography.

---

[2] More specifically, Special Probation Condition 20 prohibited Chandler from possessing "sexually explicit material, which includes but is not limited to child erotica, sexually graphic anime, [and] adult and/or child pornography ... ."

The investigator initially applied for this search warrant on July 1, but the Fairbanks district court denied the application after concluding that the requested warrant was overbroad. The investigator began a lengthy period of personal leave two days later, so the investigator did not submit a revised warrant application until August 5. The Fairbanks court granted the revised warrant application that same day, and the search warrant was then forwarded to forensic examiner Mills in Anchorage.

When Mills resumed his examination of Chandler's computer devices, he found additional images of child pornography.

Based on the pornographic images found on Chandler's devices, Chandler was indicted on five counts of possessing child pornography.

Chandler's attorney filed a pre-trial motion asking the superior court to suppress the pornographic images found on Chandler's computer devices. The attorney argued that the State violated Chandler's rights by holding Chandler's computer devices for almost four months before obtaining a search warrant — from April 9, 2014 (the day that Chandler's probation officer seized the devices) until August 5, 2014 (the day that the Fairbanks court issued the search warrant).

Following an evidentiary hearing, the superior court denied Chandler's suppression motion. (We will explain the details of the superior court's ruling later in this opinion.)

After the court denied the suppression motion, Chandler and the State reached a *Cooksey* plea agreement.[3] Under the terms of this agreement, Chandler

---

[3]   *See Cooksey v. State*, 524 P.2d 1251, 1255 (Alaska 1974) (holding that, despite the normal rule that a plea of guilty or no contest waives all non-jurisdictional defects in a criminal prosecution, the State and a defendant can agree that the defendant will plead no contest on condition that the defendant be allowed to pursue an issue on appeal — so long as this issue was litigated in the trial court, and so long as the resolution of this issue is dispositive of the defendant's case).

pleaded no contest to a single count of possessing child pornography, on condition that he could pursue the following issue on appeal: "Did the seizure of Mr. Chandler's computers become unreasonable due to the delay in securing a search warrant?"

*Chandler's claim that it was unlawful for his probation officer to remove the computer devices from Chandler's residence*

As we have already explained, at the time of the events in this case, Chandler was on probation from a 2013 conviction for possessing child pornography, and one of the conditions of Chandler's probation required him to submit to searches of his residence and any of his personal computers for "sexually explicit material" — a phrase that was defined in Special Probation Condition 20 as including "child erotica, sexually graphic anime, [and] adult and/or child pornography".

In this appeal, Chandler argues that even though his conditions of probation gave his probation officer the authority to *search* his computer devices, these conditions of probation did not give his probation officer the authority to *seize* those devices — *i.e.*, remove them from Chandler's residence.

But Chandler's *Cooksey* plea agreement with the State does not allow him to challenge the probation officer's seizure of the computers. Instead, the *Cooksey* agreement expressly limits Chandler to one appellate issue: whether the seizure of his computer devices *became* unreasonable "due to the delay in securing a search warrant".

Thus, when Chandler pleaded no contest, he waived any claim that the probation officer's initial seizure of his computer devices was unlawful. Even if this claim were well-founded, it would be a non-jurisdictional defect in the State's prosecution of Chandler — and a defendant who pleads guilty or no contest waives all non-jurisdictional defects in the prosecution, unless the defendant reaches a *Cooksey*

agreement with the State that expressly allows the defendant to litigate a particular alleged defect. *Cooksey v. State*, 524 P.2d 1251, 1255 (Alaska 1974); *Miles v. State*, 825 P.2d 904, 905 (Alaska App. 1992).

> *Chandler's claim that the seizure of his computer devices became unlawful because the State held these computers for almost four months before the State Troopers secured a search warrant*

As we have explained, Chandler's conditions of probation included a provision requiring him to submit to a search of his computer devices for "sexually explicit material", which was defined to include child pornography. Thus, Chandler's probation officer could lawfully search these devices even if she lacked probable cause to believe that these devices contained evidence that Chandler had committed a new crime or had violated his probation in some other way.[4] And, as we have just explained, Chandler waived any challenge to his probation officer's decision to remove the computer devices from Chandler's residence to facilitate this search.

After Chandler's probation officer seized the computer devices, she promptly began to investigate the contents of these devices. With the assistance of a local computer technician, the probation officer conducted a preliminary search of the computer devices. This preliminary search revealed that Chandler had sexually graphic anime on his devices, and it also suggested that Chandler had been searching for child pornography: Chandler's browser history showed that he had searched the internet for content that contained the words "teen" and "young".

---

[4] *State v. James*, 963 P.2d 1080, 1082 (Alaska App. 1998), relying on *Roman v. State*, 570 P.2d 1235, 1243–44 (Alaska 1977), and *Soroka v. State*, 598 P.2d 69, 71 n. 5 (Alaska 1979).

At this point, the probation officer decided that any further search of Chandler's devices should be conducted by a more experienced forensic examiner, so the next day she contacted the State Troopers, and Chandler's devices were shipped to the State Trooper Technical Crimes Unit in Anchorage. The forensic examination conducted in Anchorage revealed that Chandler's computer devices contained five images of child pornography — the images for which he was indicted.

*(a) The law pertaining to Chandler's claim*

When the police have reason to believe that an item of property constitutes or contains evidence of a crime, they are authorized to temporarily seize the property while they apply for a search warrant. The authorized scope of this temporary seizure hinges on the level of the police suspicion.

If the police have only a reasonable suspicion that the property is connected to a crime, the seizure of the property must be of limited scope and duration, consistent with the law relating to investigatory stops. [5]

But even when the police have probable cause to believe that the property constitutes or contains evidence of a crime (thus allowing them to engage in an initial seizure of greater duration and intrusiveness [6]), they must still act diligently in seeking a warrant. Thus, even when the initial warrantless seizure of the property is lawful, the

_____

[5] *See United States v. Place*, 462 U.S. 696, 708–710; 103 S.Ct. 2637, 2645–46; 77 L.Ed.2d 110 (1983); *Moore v. State*, 372 P.3d 922, 924–25 (Alaska App. 2016); *Peschel v. State*, 770 P.2d 1144, 1147–48 (Alaska App. 1989).

[6] *See United States v. Chadwick*, 433 U.S. 1, 13–14 nn. 8–9; 97 S.Ct. 2476, 2485 nn. 8–9; 53 L.Ed.2d 538 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *Willie v. State*, 829 P.2d 310, 313 (Alaska App. 1992).

seizure may later become unlawful if the police unreasonably delay in obtaining a search warrant. In such cases, the government's warrantless *retention* of the property may become so lengthy as to violate the owner's rights under the warrant clause of the Fourth Amendment.[7]

The rule is different, however, when an exception to the warrant requirement permits officers to *search* an item. When, for example, an item of property is seized with the owner's consent, the police do not need to obtain a warrant to authorize their continued retention of the property.[8]

This is not to say that the police thereby become entitled to hold the property indefinitely. An unreasonably long retention of the property can still violate the owner's Fourth Amendment rights. But when the police have probable cause *and* there is an exception to the warrant requirement that permits searching the item, the police can normally retain the property (without a warrant) for as long as is reasonably needed for their criminal investigation.[9]

---

[7]  *See Moore*, 372 P.3d at 926–27; *United States v. Mitchell*, 565 F.3d 1347, 1350–51 (11th Cir. 2009); *People v. Link*, 32 Cal.Rptr.2d 149, 153 (Cal. App. 1994); *United States v. Dass*, 849 F.2d 414, 415–16 (9th Cir. 1988).

[8]  *See Frink v. State*, 597 P.2d 154, 167 (Alaska 1979); *Sleziak v. State*, 454 P.2d 252, 257–58 (Alaska 1969).

[9]  *United States v. Carter*, 139 F.3d 424, 426 (4th Cir. 1998) (*en banc*); *Mitchell*, 565 F.3d at 1352 (noting that the government is not required to return seized property if it has evidentiary value to an ongoing criminal investigation or prosecution); *United States v. Arndt*, unpublished, 2010 WL 384890 at *11 (W.D. Mo. 2010); *United States v. Wright*, unpublished, 2010 WL 841307 at *9 (E.D. Tenn. 2010). *But compare Sovereign News Co. v. United States*, 690 F.2d 569, 577–78 (6th Cir. 1982) (holding that even when the government can show that the seized property might be evidence of a potential criminal or regulatory violation, the government must be reasonably diligent in initiating the relevant criminal or regulatory investigation).

*(b) The cases that Chandler relies on*

Chandler disputes this view of the law. He argues that even though his conditions of probation gave his probation officer the authority to search his computer devices, and even though the probation officer was authorized to seek the help of the State Troopers to perform this probation search, the State Troopers were nevertheless required to promptly obtain a judicial warrant if they wished to retain possession of Chandler's computer devices to conduct their forensic examination.

In support of this claim, Chandler relies primarily on three cases: *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), and *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). But as we are about to explain, two of these cases are not pertinent to the facts of Chandler's case, and the remaining case is poorly reasoned and unconvincing.

In *United States v. Dass*, the police removed several packages from post office facilities and subjected them to a drug-sniffing dog. But after the dog "alerted" to the packages, the police held these packages for between 7 and 23 days before securing warrants to open the packages and search them.[10] The court held that the officers' delay in seeking the search warrants was unreasonable, and the court suppressed the contents of the packages.[11]

However, the facts of *Dass* did not involve any exception to the warrant requirement, so *Dass* does not address the issues raised when there *is* an applicable exception to the warrant requirement. We thus conclude that *Dass* is not pertinent to our resolution of Chandler's case.

---

[10] *Dass*, 849 F.2d at 415–16.

[11] *Ibid.*

*United States v. Mitchell* involved a defendant who came under investigation after he used his credit card to purchase access to a child pornography website. When officers went to Mitchell's residence to talk to him about this, he admitted that he had purchased subscriptions to two pornography websites. He also told the officers that he had two computers in his home — a laptop upstairs, and a desktop computer downstairs — and that both of these computers "probably" contained child pornography. [12]

Mitchell gave the officers permission to search the laptop, but he refused to consent to a search of the desktop. Because Mitchell would not allow the officers to search the desktop, the officers opened up its case, removed the hard drive, and took custody of it. Twenty-one days later, the officers applied for (and obtained) a warrant to examine the contents of the hard drive. [13] Mitchell was ultimately convicted of possessing child pornography. [14]

It is not clear from the *Mitchell* opinion whether Mitchell failed to challenge the search of the laptop because his conviction was based solely on the contents of the hard drive from his desktop computer, or whether (alternatively) Mitchell's conviction was based on child pornography that was found on both the laptop and the desktop computers, but Mitchell refrained from challenging the search of the laptop because he had given his consent for this search.

In any event, the *Mitchell* opinion discusses only Mitchell's challenge to the government's seizure and retention of the hard drive from his desktop computer.

---

[12]  *Mitchell*, 565 F.3d at 1348–49.

[13]  *Id.* at 1349.

[14]  *Id.* at 1350.

On appeal, Mitchell acknowledged that when the police have probable cause to believe that a computer holds evidence of a crime, the police are authorized to seize the computer and keep custody of it while they apply for a warrant to search its contents.[15] However, Mitchell argued that the officers acted unreasonably — and violated his rights under the Fourth Amendment — when they waited three weeks to apply for the warrant to search his hard drive.[16]

A panel of the Eleventh Circuit concluded that there was no valid excuse for this three-week delay, and that the government's retention of the hard drive during these three weeks constituted a substantial infringement of Mitchell's possessory interest. The court therefore suppressed the evidence found on the hard drive.[17]

But like *Dass*, the *Mitchell* case presented a situation where, even though the police had probable cause, there was no applicable exception to the warrant requirement. Thus, like the Ninth Circuit's opinion in *Dass*, the Eleventh Circuit's opinion in *Mitchell* does not address the issues raised when there *is* an applicable exception to the warrant requirement. We therefore conclude that the *Mitchell* opinion is not pertinent to our resolution of Chandler's case.

We now turn to the third case cited by Chandler: *United States v. Sullivan*. The defendant in *Sullivan* was on parole for offenses involving sexual abuse of minors. Sullivan's parole officers received a report that he had run away with an under-age girl and was having sex with her. The officers arrested Sullivan after they found him in his car outside a motel. During this arrest, the officers conducted a parole search of

---

[15] *Ibid.*

[16] *Ibid.*

[17] *Id.* at 1350–53.

Sullivan's car — and, during this search, the officers found and seized Sullivan's laptop computer. [18]

Two weeks after his arrest, Sullivan urged the police to search his laptop — telling them that the laptop contained a video that would support his claim that he reasonably thought the girl was 19 years old. But, apparently, the police did not immediately search the laptop even though they now had Sullivan's consent. Instead, one week later, the officers obtained a search warrant for the laptop. [19]

In the *Sullivan* decision, the Ninth Circuit proceeded under the assumption that Sullivan's rights under the Fourth Amendment would be violated if the police held onto his laptop computer for too long a time before they obtained a warrant — even though two different exceptions to the warrant requirement arguably applied to Sullivan's case (because the seizure of Sullivan's laptop occurred during a parole search, and because Sullivan later gave the police permission to search this laptop).

In support of their premise that the police were required to promptly obtain a search warrant, the Ninth Circuit relied on a trio of cases (two Supreme Court decisions and a prior decision of the Ninth Circuit) — but all three of these cases involved a temporary investigative detention of property based on reasonable suspicion. That is, all three cases involved situations where the police clearly needed to obtain a warrant if they wished to hold the property for any extended period of time. *See United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); and *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002).

---

[18]  *Sullivan*, 797 F.3d at 629.

[19]  *Ibid.*

In the Ninth Circuit's *Sullivan* opinion, the court acknowledged that Sullivan's laptop was seized during a valid parole search, and that Sullivan consented to a search of the laptop. But the court did not discuss whether these factors took Sullivan's case outside the rule of *Van Leeuwen*, *Place*, and *Hernandez* — the rule for temporary seizures of property based on reasonable suspicion. Instead, the Ninth Circuit treated Sullivan's parole conditions, and his consent to the search, as merely being factors that were relevant to the court's assessment of whether the government's retention of Sullivan's computer was reasonable under *Van Leeuwen*, *Place*, and *Hernandez*. [20]

We are not sure what to make of the *Sullivan* decision. Either, for some reason that goes unexplained in the opinion, the Ninth Circuit concluded that the seizure of Sullivan's computer was not covered by any exception to the warrant requirement, and that the police were therefore required to promptly secure a warrant authorizing them to hold onto the computer and search it — or, alternatively, the Ninth Circuit failed to see that the *Van Leeuwen* / *Place* / *Hernandez* rule did not govern Sullivan's case because there were two applicable exceptions to the warrant requirement. In either event, we conclude that the *Sullivan* decision is not entitled to any weight when we resolve Chandler's appeal.

We therefore re-affirm our earlier statement that, when a police seizure of property falls within an exception to the warrant requirement, the police do not need to obtain a warrant to authorize their continued retention of the property for the purpose of searching it. [21]

---

[20]   *Id.* at 633–34.

[21]   *See Sleziak v. State*, 459 P.2d 252, 257–58 (Alaska 1969); *see also Frink v. State*, 597 P.2d 154, 167 (Alaska 1979).

Thus, when we evaluate Chandler's claim that the authorities unlawfully retained possession of his computer devices for four months before they secured a search warrant, the first question we must ask is whether the initial seizure of Chandler's computer devices was governed by an exception to the warrant requirement.

### (c) Was the probation officer's seizure of Chandler's computers authorized under an exception to the warrant requirement?

The answer to this question is yes: "A search by a probation officer of a probationer's residence [or property] is a recognized exception to the warrant requirement as long as the search has been authorized by the conditions of probation or release, the search is conducted by or at the direction of probation authorities, and the search bears a direct relationship to the nature of the crime for which the probationer was convicted." *Milton v. State*, 879 P.2d 1031, 1034 (Alaska App. 1994).

Although Chandler argues on appeal that his probation officer's authority to search the computer devices did not include the authority to seize them, Chandler waived his right to challenge his probation officer's seizure of the computer devices when he pleaded no contest and failed to expressly preserve this claim.

Chandler raises another related objection to the government's retention of his computers: Chandler challenges his probation officer's authority to retain the computers while she waited for forensic assistance from the State Trooper Technical Crimes Unit.

As we have explained, the probation officer took Chandler's computers back to her office and there, with the aid of a local computer technician, she performed a cursory search of the computers. According to the probation officer's later testimony, and according to the superior court's findings, this initial search of Chandler's computers

revealed "sexually explicit anime", and Chandler's possession of this anime constituted a violation of his conditions of probation. (Special Condition 20 of Chandler's probation explicitly prohibited him from possessing "sexually graphic anime".)

The superior court ruled that the discovery of this anime provided a justification for the probation officer (and, later, the State Troopers) to retain possession of Chandler's computer devices pending a more complete forensic examination and, ultimately, a resolution of Chandler's probation violations.

In his brief to this Court, Chandler argues that his possession of this "sexually graphic anime" could not serve as a justification for the authorities' retention of his computer devices. Chandler relies on this Court's decision in *Diorec v. State*, 295 P.3d 409 (Alaska App. 2013), where we held that a probationer cannot be prohibited from possessing "sexually explicit material", because this term is unconstitutionally vague.

Chandler notes that our decision in *Diorec* had already been issued when Chandler's conditions of probation were imposed, and that *Diorec* had been the law for three years when the present case arose (after the anime was found on Chandler's computers). Based on *Diorec*, Chandler asserts that it was unconstitutional for his probation conditions to prohibit him from possessing "sexually graphic anime" — and that therefore, even after the probation officer found sexually graphic anime on Chandler's computer devices, the probation officer had no justification for continuing to hold these devices, nor any justification for asking the superior court to revoke Chandler's probation based on his possession of this anime.

Chandler also argues in the alternative that even if the phrase "sexually graphic anime" is sufficiently well-defined to meet constitutional requirements, the State failed to present evidence to establish the precise characteristics of the anime found on

Chandler's computers, and thus the superior court lacked a sufficient basis for concluding that these anime were sexually graphic.

The main problem with Chandler's arguments is that Chandler's attorney never raised these issues when Chandler's suppression motion was litigated in the superior court. The defense attorney never argued that Chandler's "sexually graphic anime" probation condition was unconstitutionally vague, nor did the attorney argue that the anime found on Chandler's computer devices failed to meet any reasonable definition of "sexually graphic".

Rather, Chandler's attorney argued that even though Chandler's probation officer may have found evidence of a probation violation on the computer devices (*i.e.*, the sexually graphic anime), the State's continued possession of Chandler's computer devices became unlawful *later* — because the Troopers waited so long before securing a search warrant for these devices.

The limited scope of Chandler's suppression argument — and the fact that his suppression argument had nothing to do with the validity of his "sexually graphic anime" probation condition — is further demonstrated by the content of the evidentiary hearing held in the superior court.

At that evidentiary hearing, Chandler's probation officer testified that Special Probation Condition 20 prohibited Chandler from possessing sexually graphic anime, and that she (and her local computer technician) found sexually graphic anime on Chandler's computer devices — thus establishing that Chandler had violated his probation.

When Chandler's attorney cross-examined the probation officer, he did not ask a single question regarding this sexually graphic anime. The defense attorney did not ask the probation officer to provide a fuller description of the anime found on Chandler's computer devices, the attorney did not ask the officer to explain how

– 18 – 2701

Chandler's possession of this material constituted a violation of his probation, nor did the attorney mention the *Diorec* decision or argue in any other fashion that there was a constitutional flaw in the wording or substance of Chandler's "sexually graphic anime" probation condition.

Given this record, and given Chandler's plea of no contest, Chandler cannot now attack the "sexually graphic anime" provision of Special Probation Condition 20, nor can he attack the superior court's finding that he violated his probation by possessing the anime.

We therefore uphold the superior court's findings that, shortly after the probation officer seized Chandler's computer devices, the probation officer discovered computer files which showed (1) that Chandler was currently in violation of his probation (by possessing the anime), and (2) that Chandler's computer devices were instrumentalities of his ongoing probation violations (because the devices were used for storing and displaying the anime).

The probation officer's seizure and retention of Chandler's computer devices was therefore authorized under the "probation search" exception to the warrant requirement.

*(d) Was the State Troopers' ensuing retention of Chandler's computer devices a continuation of the probation search and seizure?*

As we have just explained, the superior court found that Chandler's possession of the sexually graphic anime constituted an ongoing violation of his probation, and that Chandler's computer devices were instrumentalities of this ongoing violation. Given these findings, the superior court ruled that it was presumptively legal

for Chandler's probation officer to retain the computer devices until any probation violation proceedings were resolved.

But Chandler's probation officer did not immediately file a petition to revoke Chandler's probation after she found the anime. Instead, the probation officer transferred possession of Chandler's computer devices to the State Troopers, so that their forensic analysts could examine these devices more closely.

This raises the question of how to categorize the Troopers' retention and examination of Chandler's computer devices.

Obviously, one could view the Troopers' retention and examination of Chandler's computer devices as simply a continuation of the probation officer's authorized seizure and search of these devices. After the probation officer found the sexually graphic anime during her initial preliminary examination of Chandler's computer devices, the probation officer was authorized to continue holding onto these devices until she completed her investigation of Chandler's potential other violations of the "sexually explicit material" probation condition. And because this investigation required a forensic examination by someone with specialized skills, the probation officer could reasonably enlist the assistance of the State Troopers' Technical Crimes Unit.

This is how the superior court viewed the matter. As the court stated in its written decision, the court found (based on the testimony presented at the evidentiary hearing) that the seizure of Chandler's computer devices was reasonable under the Fourth Amendment because "[these] electronics were evidence of a probation violation from the very first day that they were seized." Thus, the superior court concluded, the government's retention of Chandler's computer devices "did not infringe on his possessory interests[,] as any possessory interest [Chandler might claim] was contingent on the disposition of the probation violations and related criminal charges."

In other words, the superior court ruled that the warrant clause of the Fourth Amendment did not limit how long the probation officer (and her agents, the State Troopers) retained possession of Chandler's computer devices, so long as the authorities were diligently pursuing their investigation into Chandler's potential violations of the probation condition.

The superior court's conclusion is amply supported by the testimony given at the evidentiary hearing.

Chandler's probation officer testified that she lacked the expertise to perform a competent search of Chandler's computer devices, so she enlisted the assistance of the State Troopers. The probation officer's testimony was corroborated by the testimony given by Trooper Sgt. David Willson, the supervisor of the Technical Crimes Unit in Anchorage. Willson told the court that Chandler's computer devices were transferred to his unit by Chandler's probation officer, who "requested that we search [them] pursuant to a probation search".

Willson explained that his unit "[was] very careful to make sure we have appropriate search authority, whether it be [by] recorded consent [or] written consent, [or] a search warrant, or probation conditions" — and that, in Chandler's case, the search of the computer devices was authorized by Chandler's probation conditions. According to Willson, Chandler's probation officer furnished the Technical Crimes Unit with a copy of these probation conditions, and she asked the unit to search the computer devices "for items that were in violation of the probation conditions".

Willson further explained that, because the purpose of the search was to look for violations of Chandler's probation condition, the Troopers' discovery of probation violations that constituted new crimes (*i.e.*, the discovery of the first child pornography images on Chandler's computer devices) prompted Willson to instruct his forensic examiner to stop examining these devices until they could obtain a warrant:

– 21 –                                                                              2701

*Sgt. Willson*:  When we're doing a probation search, we're essentially looking for evidence of ... violati[ons of] probation ... that will result in a petition to revoke probation or something like that.  We're not looking for evidence of the crime of possession of child pornography, per se.  The moment we see that — boom, we've got a new criminal charge, a C felony, very different from the original charges that are anticipated from a probation violation.  ... [So] in this and other jurisdictions, it is best practice[] to stop [examining the computer] upon viewing [the] child pornography, and get a warrant.

In other words, Willson testified that the discovery of the child pornography on Chandler's computer devices meant, at least conceivably, that Chandler could later argue that any continued forensic examination of these devices exceeded the scope of what the probation officer had authorized the Technical Crimes Unit to do (*i.e.*, look for potential violations of the probation condition).  So Willson decided that, before the Technical Crimes Unit continued its forensic examination, the more prudent course was to obtain a warrant that specifically authorized a search for all evidence of child pornography.

(In Chandler's case, it appears that all of the child pornography he possessed did, in fact, constitute a violation of his condition of probation.  Thus, no issue was presented regarding a possible discrepancy between the scope of the search authorized by Chandler's condition of probation and the scope of the search that was later authorized by the warrant issued by the superior court in early August.)

Despite this testimony from the probation officer and from Sgt. Willson, Chandler challenges the superior court's conclusion that the State Troopers' retention and forensic examination of Chandler's computer devices was a continuation or

outgrowth of the probation officer's investigation into Chandler's violations of probation.

In particular, Chandler points to the fact that, at one point in the probation officer's testimony, she referred to the investigation of Chandler's potential new crimes as "outside my scope of searching". But the probation officer immediately clarified that she did *not* mean that such a search was outside her authority as Chandler's probation officer. Rather, she meant that such a search was beyond her expertise, and that she needed the technical assistance of the State Troopers.

(Indeed, Chandler's possession of child pornography was a direct violation of Special Condition 20 of his probation, which prohibited him from possessing "sexually explicit material", and which defined this phrase as including the possession of "child pornography".)

Special Condition 22 of Chandler's probation required him to submit to searches of his computer devices for the material prohibited by Special Condition 20. We therefore affirm the superior court's finding that, when the State Troopers subjected Chandler's computer devices to forensic examination, they were assisting Chandler's probation officer in performing a probation search — *i.e.*, a search that was expressly authorized by Chandler's conditions of probation.

Chandler's probation officer did not need a warrant to seize the computer devices and retain them for the purpose of conducting this search, nor did the State Troopers who were assisting her. We therefore affirm the superior court's denial of Chandler's suppression motion.

*A clarification of exactly what we are deciding today — and a request to the supreme court*

The only claim that Chandler preserved for appeal is his mistaken argument under the warrant clause of the Fourth Amendment — his contention that, after the government seized his computer devices without a warrant, the government was required to promptly secure a warrant or else the government's continued possession of his computer devices would become illegal. As we have explained in this opinion, Chandler's argument is mistaken because, even though the government seized his computer devices without a warrant, the government acted under a recognized exception to the warrant requirement. And, as the superior court ruled, once the government discovered evidence of probation violations on Chandler's computer devices, the government was entitled to retain possession of those devices until Chandler's probation violations and any related criminal charges were resolved.

The superior court's ruling in Chandler's case is in line with existing authority pertaining to the government's lawful seizure of evidence under an exception to the warrant requirement. But by affirming the superior court's ruling in Chandler's case, we are not saying that, as long as property is lawfully seized, there are never any limits on the government's retention of that property.

One recognized limit on the government's retention of lawfully seized evidence is that the government can hold the property only so long as the government can demonstrate a legitimate interest in retaining it. See, for example, *Sovereign News Co. v. United States*, 690 F.2d 569, 577–78 (6th Cir. 1982), where the Sixth Circuit held that the government can retain seized business records only so long as the government can show that the records are needed for a specific ongoing or proposed investigation.

(When the superior court issued its ruling in Chandler's case, the court seemingly acknowledged this limitation on the government's authority to retain possession of Chandler's computer devices.)

However, because Chandler's case involves the seizure of computing devices, we believe that his case illustrates special concerns that are not adequately addressed by the rule that allows the government to hold evidence for as long as the evidence is needed for an ongoing or a proposed investigation.

As this Court noted in *Pohland v. State*, 436 P.3d 1093 (Alaska App. 2019), and as the United States Supreme Court acknowledged in *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), a modern-day computing device typically "'notonly contains indigitalformmany sensitive records previously found in thehome', but also 'a broad array of private information never found in a home in any form'". *Pohland*, 436 P.2d at 1098, quoting *Riley*, 573 U.S. at 396–97, 134 S.Ct. at 2491. Because of the uniquely important role that computing devices have assumed in the personal lives of most citizens, courts are beginning to recognize these devices may be entitled to special Fourth Amendment protections. In cases like Chandler's — *i.e.*, cases where government agents lawfully seize all of a person's computing devices — a person may be left without access to important business records, correspondence, photographs, passwords, and other personal information. In many instances, these business records and this personal information will have no relevance to the reasons why the government seized the computing devices — but even when this computer data *is* relevant to the government's investigation, the computer owner's lack of access to this data will entail a significant disruption of many unrelated aspects of the owner's life. These adverse consequences are only heightened in situations where the computing device contains evidence, not of the *owner's* criminal activities, but of *someone else's* criminal activities.

Alaska Rule of Criminal Procedure 37(c) authorizes a property owner to challenge the government's seizure of property, but Rule 37(c) only authorizes a court to grant relief from an *unlawful* search or seizure. This rule does not address the question of whether a property owner should be afforded some kind of relief even if the government's seizure and retention of the property is lawful. Seemingly, our existing law offers no remedy (other than informal negotiation with the authorities) for a computer owner who seeks access to a usable copy of their electronic data after that data has been lawfully seized.

We emphasize that Chandler has not actually raised these concerns in this appeal. Other than Chandler's mistaken assertion that the government's retention of his computer devices violated the warrant clause of the Fourth Amendment, Chandler never claimed that there was any limit on the government's authority to hold his computer devices, nor did Chandler ask the superior court to order the government to furnish him with a copy of the data on these devices. Indeed, Chandler appears to have taken the position that, once the government obtained a search warrant in an *ex parte* proceeding (*i.e.*, in a proceeding held without notice to him, and without any opportunity for him to respond to the government's assertions), there was no limit on the government's retention of his computer devices.

Nevertheless, Chandler's case illustrates the situation that can arise when the government lawfully seizes computer devices in connection with an investigation — either under the authority of a warrant or under a recognized exception to the warrant requirement — and when it takes weeks or even months for the government's analysts to complete their examination of the devices.

In his law review article, "Search Warrants in an Era of Digital Evidence", Professor Orin S. Kerr urges states to amend their search warrant rules to require the government to conduct forensic examinations of digital devices in a timely

fashion.[22]  He also urges states to amend their rules so that the police are required to "image" the seized computer devices (*i.e.*, create digital duplicates of their contents) — so that, no matter how much time the forensic examination might require, the non-criminal content of these devices can be returned to the owner within a reasonable period of time.[23]

While we do not necessarily endorse all of Professor Kerr's suggestions, we agree with him that there should be time standards for the government's forensic searches of computer devices, or at least for giving computer owners access to the non-criminal contents of their computer devices.  We also believe that these standards should be codified in the court rules, rather than being left to the discretion of individual trial court judges (or appellate judges, for that matter).

We therefore ask the Alaska Supreme Court to direct its Criminal Rules Committee, or a special committee appointed for this purpose, to study the issues raised by the lawful seizure of digital devices, and to draft a set of rules that will reasonably accommodate both the interests of the government and the interests of computer owners.

*Conclusion*

For the reasons explained in this opinion, the judgement of the superior court is AFFIRMED.

---

[22]  Orin S. Kerr, *Search Warrants in an Era of Digital Evidence*, 75 Miss. L.J. 85, 130–39 (2005).  (The page numbering is different in the Westlaw version of this law review article; in the Westlaw version, the relevant pages are 126–134.)

[23]  *Id.* at 134–37.